**In re FIRST CAPITAL MORTGAGE LOAN CORPORATION, a Utah corporation, Debtor.**

**RESEARCH–PLANNING, INC., a Utah corporation, Plaintiff–Appellant,**

**v.**

**Roger G. SEGAL, Trustee, Defendant–Appellee.**

**No. 86–C–0622J.**

United States District Court, D. Utah, Central Division.

April 24, 1987.

MEMORANDUM OPINION
AND ORDER

JENKINS, Chief Judge.

The issue in this bankruptcy appeal is whether money that the debtor received as an escrow agent, deposited in its general account and used to pay its debts should be returned to the escrow depositor after the bankruptcy trustee recovered the payments as preferential transfers.

The court heard arguments on this appeal on December 1, 1986. Claron C. Spencer appeared on behalf of Research–Planning, the plaintiff-appellant, and John T. Morgan represented Roger G. Segal, the bankruptcy trustee and defendant-appellee. The court reserved on the matter at that time and later allowed the plaintiff to file a supplemental memorandum. Now, after considering the arguments of counsel and the pertinent legal authorities, the court enters this memorandum opinion and order affirming the judgment of the bankruptcy court.

## I.

The relevant facts are not disputed. In August 1980 Research–Planning agreed to loan $260,000 to R.K. Buie & Associates to enable Buie to acquire some property. The parties to the loan agreement executed a written escrow agreement by which they agreed to employ the debtor, First Capital Mortgage Loan Corporation, to act as escrow agent. Research–Planning gave First Capital a cashier's check for $260,000 made payable to the order of First Capital and Buie. The check was endorsed by both payees, and First Capital deposited it in its general account at the Bank of Utah. Some of the money went to cover two checks First Capital had written on its general account: the first, in the amount of $66,000, was made payable to First Security Bank of Utah or Bank of Utah and was endorsed "Credit to the Account of Named Payee" by the Bank of Utah; the second, in the amount of $2,489.66, was made payable to and endorsed by First Security Bank of Utah.

Claren Spencer, Spencer & Associates, Salt Lake City, Utah, for plaintiff-appellant.

Roger Segal, Cohne, Rappaport & Segal, Salt Lake City, Utah, for defendant-appellee.

Some six weeks later a petition for involuntary bankruptcy was filed against First Capital. On October 15, 1980, an order for relief was entered, and Roger G. Segal was appointed trustee of the bankruptcy estate. He then brought two adversary proceedings against First Security Bank to recover as unlawful preferences the money it had received. In settlement of those actions, the trustee recovered $62,489.66. Research–Planning brought this adversary proceeding to recover that money from the trustee, claiming that he held the money subject to a trust in its favor. The bankruptcy court rejected Research–Planning's claim, relegating Research–Planning to the status of an unsecured creditor whose remedy was to share in the distribution of the debtor's assets along with other unsecured creditors. *Research–Planning, Inc. v. Segal (In re First Capital Mortgage Loan Corp.),* 60 B.R. 915 (Bankr.D.Utah 1986). This appeal followed.

## II.

How the bankruptcy trustee currently holds the money depends in part on the effect of the various transactions by which the money came into his hands.

■ Research–Planning gave First Capital $260,000 in the form of a cashier's check to hold in escrow. An escrow agent is a fiduciary. 5 *Debtor–Creditor Law* ¶ 21.03[C][1] (T. Eisenberg ed. 1986).[1] First Capital had a fiduciary duty to deliver the money to Buie upon Buie's performance of the conditions of the escrow. First Capital breached that fiduciary duty by depositing the cashier's check in its general account with the Bank of Utah. Research–Planning had a claim against First Capital for breach of its fiduciary duty, *see* 5 *Debtor–Creditor Law* ¶ 21.03[D][1] & [2][a], but that claim only made Research–Planning an unsecured creditor of First Capital.

■ Because Research–Planning retained title to the cashier's check, *see supra* note 1, if the Bank of Utah had kept the check, Research–Planning could have recovered it.[2] But the bank presumably did not keep the check but presented it to Walker Bank, the drawee, for payment. Walker Bank owned the money it used to pay the check and intended to pass ownership of the money, so the Bank of Utah obtained ownership of the proceeds of the check it collected. *Cf.* G.G. Bogert & G.T. Bogert, *supra* note 2, § 476 at 119–20 (a thief acquires title to the proceeds of stolen goods). Because First Capital's deposit of the check into its general account was a general deposit,[3] the proceeds of the check

1. At times courts also refer to escrow agents as "trustees," *see, e.g., Higgins v. Kittleson,* 1 Ariz. App. 244, 401 P.2d 412, 417 (1965), but in a strict sense an escrow agent is not a trustee because he does not hold legal title to the property entrusted to him. Legal title ordinarily remains in the depositor until the conditions of the escrow are accomplished or abandoned. *Tucker v. Dr. P. Phillips Co.,* 139 F.2d 601, 603 (5th Cir.1943); *People v. Hess,* 104 Cal.App.2d 642, 234 P.2d 65, 90, *appeal dismissed,* 342 U.S. 880, 72 S.Ct. 177, 96 L.Ed. 661 (1951).

2. The result would be different if the bank were considered a holder in due course of the check, G.G. Bogert & G.T. Bogert, *The Law of Trusts and Trustees* § 476 at 119 (rev. 2d ed. 1978), but a bank that merely accepts a negotiable instrument for deposit is not considered a holder in due course because it does not take the instrument for "value." *See* Annotation, *Crediting Proceeds of Negotiable Paper to Depositor's Account, As Constituting Bank a Holder in Due Course,* 59 A.L.R.2d 1173, 1176–77 (1958). *See also* Restatement (Second) of Trusts § 324 comment a (1957).

Some cases allow the true owner to recover on the grounds that the transferee holds the property subject to a constructive trust. *See, e.g., Corporation of the President of the Church of Jesus Christ of Latter-day Saints v. Jolley,* 24 Utah 2d 187, 467 P.2d 984, 985 (1970) (one who steals property obtains no title to it, and a constructive trust may be imposed on the property in his hands or in the hands of a subsequent transferee). However, some authorities have concluded that there is no basis for a constructive trust as to property in the hands of one who has no interest in the property other than mere possession. Such a person holds the property subject to the right of the true owner to regain possession, "but not subject to being treated as a constructive trustee" because he has no legal interest in the property. G.G. Bogert & G.T. Bogert, *supra,* § 476 at 119. *Accord* Restatement of Restitution § 160 & comment j (1936).

3. "[T]he unrestricted deposit of money into an account by a fiduciary is generally considered general in nature." 1 W. Schlichting, T. Rice & J. Cooper, *Banking Law* §§ 9.02[3] at 9–8 (1987). *See also id.* § 9.06 at 9–25 ("Unless it is

technically became property of the bank. *See* 1 W. Schlichting, T. Rice & J. Cooper, *Banking Law* § 9.05 (1987). A general deposit is commingled with other money of the bank to form a single fund from which all depositors are paid. *Id.* §§ 9.02[1], 9.05 & 9.06. It creates a legal debt between the bank and the depositor; the bank is obligated to pay the amount deposited on the depositor's demand or order, but the depositor has no claim to the specific money deposited. *Id.* §§ 9.02[1] & 9.06.

Regardless of who had title to the proceeds of the cashier's check—First Capital or the Bank of Utah—as long as the funds remained in First Capital's general account, they could have been impressed with a constructive trust in favor of Research–Planning. *See* G.G. Bogert & G.T. Bogert, *supra* note 2, § 476 at 120; Restatement of Restitution § 160 comment j (1936); *id.* § 202 & comment g.

But the money did not remain in First Capital's general account. The parties have stipulated that the proceeds from the escrowed check went in part to pay the two checks written to First Security. In paying those checks, the Bank of Utah incurred no liability. *Research–Planning, Inc. v. Bank of Utah,* 690 P.2d 1130 (Utah 1984). *See also* Utah Code Ann. § 22–1–9 (1984) (if a fiduciary deposits to his personal credit funds he holds as fiduciary, the depositary bank is not liable to the principal for paying checks drawn on the account unless it has actual knowledge that the fiduciary is breaching his duty or knows such facts that its payment of the checks amounts to bad faith).

■ Similarly, First Security incurred no liability in receiving the payments. It is undisputed that First Security was a bona fide purchaser of the funds it received, that is, that it gave value for the transfers and had no notice that the deposit and transfers were in breach of First Capital's fiduciary duty as escrow agent. A bona fide purchaser who acquires title to property that would otherwise be subject to a constructive trust takes the property free from such a trust. Restatement of Restitution § 172. Thus, First Security held the funds outright. Research–Planning concedes that it could not have recovered the money as long as First Security held it.

But the money was recovered. The trustee's settlement of the two preference actions brought the money into the bankruptcy estate. The court must now decide who is entitled to it—Research–Planning or First Capital's unsecured creditors generally.

### III.

The first question the court must decide is, What did the trustee recover—what the debtor had before the transfer, or what its transferee received?

■ Ordinarily, what the transferor gives up and what the transferee receives are the same. But this case presents the anomalous situation in which the transfer creates in the transferee a greater interest in the property transferred than the transferor had to convey. Before the transfer, First Capital had no title to the property transferred or, at most, had bare legal title.[4] After the transfer, however, First

---

agreed that the deposit is special, ... the deposit is a general deposit").

4. The parties have treated this case as though the escrow arrangement created an express trust, in which case First Capital, as trustee, would have held legal title to the escrowed property.

The parties have stipulated that First Capital held the $260,000 "in trust for Research–Planning," that "Research–Planning's trust moneys were used" to pay the checks to First Security and that the checks "were paid with plaintiff's moneys without authorization from Research–Planning and in violation of the escrow agreement." Stipulation of Facts ¶¶ 2, 4 & 5, Record

on Appeal at 36. As indicated, an escrow is not a trust in the strict sense of the word because the escrow agent does not hold legal title to the escrowed property. *See supra* note 1. To the extent the stipulated facts express legal conclusions that are not supported by the record, this court is free to ignore them. *Gans S.S. Line v. United States,* 105 F.2d 955, 957 (2d Cir.), *cert. denied,* 308 U.S. 613, 60 S.Ct. 179, 84 L.Ed. 512 (1939). However, the court will accept for the sake of argument Research–Planning's position that the escrow created an express trust. Some courts have so held. *See, e.g., Parker State Bank v. Pennington,* 9 F.2d 966 (8th Cir.1925). It at least created a trust in the sense that it imposed

Security, as a bona fide purchaser, had both legal and equitable title to the property; its claim to the money was superior to the claims of all the world (with the possible exception of the bankruptcy trustee).

One could argue that all the trustee's actions did was to "avoid," that is, undo, the transfers to First Security, putting the parties in the position they were in before the transfers. Since the trustee succeeds to the debtor's interest in property, the trustee should arguably have no better claim to the money than First Capital would have had before the transfers. Before the transfers, Research–Planning had a better claim to the money than anyone else. *See Gulf Petroleum, S.A. v. Collazo,* 316 F.2d 257, 261 (1st Cir.1963); Restatement of Restitution § 202 comment c & comment g & illustration 10; G.G. Bogert & G.T. Bogert, *supra* note 2, § 481 at 275–76. *See also* 11 U.S.C. § 541 (1982 & Supp. III 1985) (defining property of the bankruptcy estate).[5] So arguably it should have a better claim to the money now, and the trustee should hold the money subject to its interest.

The court concludes, however, that what the trustee recovered was what First Security—not First Capital—had.

The bankruptcy trustee succeeds "to the rights of the transferee in the avoided transfer...." *Staats v. Barry (In re Barry),* 31 B.R. 683, 686 (Bankr.S.D.Ohio 1983). *See also In re Vermont Fiberglass, Inc.,* 44 B.R. 505, 511 (Bankr.D.Vt.1984) ("the trustee succeeds to such rights as he may defeat in the hands of the transferee of an avoided transfer"). Because First Security held the money free from any claim of Research–Planning, the trustee recovered

the money free from such claims. *Cf. Peters v. White County Farm Supply, Inc. (In re Templeton),* 1 B.R. 245, 249 (Bankr. E.D.1979) (where property held by husband and wife as tenants by the entirety was transferred to a creditor of the husband and later recovered through a preference action, the trustee held the property free of the wife's interest). *See also Elin v. Busche (In re Elin),* 20 B.R. 1012, 1016–17 (D.N.J.1982) (assets recoverable under 11 U.S.C. § 544 become property of the bankruptcy estate notwithstanding third persons' equitable interests in the property), *aff'd mem.,* 707 F.2d 1400 (3d Cir.1983); *In re Vermont Fiberglass, Inc.,* 45 B.R. 603, 606 (Bankr.D.Vt.1984) (accord).

## IV.

Research–Planning argues that, even if the trustee initially recovered the money free and clear of any third parties' interests, the money was originally subject to an express trust,[6] which reattached to the property once it was brought back into the bankruptcy estate. It relies on the general rule that, when a trustee has transferred trust property to a bona fide purchaser in breach of the trust and then reacquires the property, the trustee holds the property subject to the trust. *See, e.g., Turner v. Kirkwood,* 49 F.2d 590, 596 (10th Cir.1931).[7] Of course, in this case the trustee who recovered the property was the trustee in bankruptcy, not the trustee of the trust. So unless one equates the bankruptcy trustee with the nonbankruptcy trustee, the rule the plaintiff relies on does not help it.

The plaintiff argues that the bankruptcy trustee can have no greater interest in

---

on First Capital a fiduciary obligation to deal with the property it held for the benefit of Research–Planning. The distinction is of no practical effect in this case because even if the escrow created an express trust, before bankruptcy First Security (as a bona fide purchaser) held the money free from any trust, express or constructive. Restatement (Second) of Trusts § 284 (1957); Restatement of Restitution § 172.

**5.** By stipulating that "Research–Planning's trust moneys were used" to pay First Security, the parties apparently recognized that Research–

Planning was entitled to the money as long as it remained in First Capital's account.

**6.** The court accepts Research–Planning's premise for the sake of argument. *See supra* note 4.

**7.** The same is generally true of property subject to a constructive trust that the constructive trustee reacquires from a bona fide purchaser, Restatement of Restitution § 176, so the result in this case does not depend on careful distinctions between express trusts and constructive trusts. *See also supra* note 4.

property he recovers than the debtor would have had if it had reacquired the property because the bankruptcy trustee stands in the shoes of the debtor. *See Angeles Real Estate Co. v. Kerxton (In re Construction General, Inc.),* 737 F.2d 416, 418 (4th Cir. 1984).

The problem with the plaintiff's argument is that it tries to make too much of a convenient metaphor. The debtor's shoes can take the trustee only so far.

The filing of a petition in bankruptcy creates the bankruptcy estate. 11 U.S.C. § 541(a) (Supp. III 1985). The estate and the debtor are separate entities. Under the bankruptcy code, the trustee is "the representative of the estate," 11 U.S.C. § 323 (1982), not of the debtor. Thus, the trustee and the debtor are not the same and cannot be equated for all purposes.

In recovering property through the exercise of his avoidance powers, the trustee does not stand in the shoes of the debtor but exercises extraordinary powers that the debtor does not have. Before bankruptcy, First Capital could not have recovered the money from First Security. The ensuing bankruptcy did not enlarge First Capital's rights. A debtor as such has no power in itself to avoid and recover a preferential transfer.[8]

■ The trustee's powers to avoid a preferential transfer and to recover any property so transferred are conferred by statute and are reserved exclusively for the trustee. *Robison v. First Financial Capital Management Corp. (In re Sweetwater),* 55 B.R..724, 734 (D.Utah 1985). They are meant to "facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor," H.R.Rep. No. 595, 95th Cong., 1st Sess. 178 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6138, by allowing the trustee to bring into the bankruptcy estate property that the debtor has parted with but that, in equity, his creditors ought to share equally. For that reason, the trustee

is only authorized to recover preferential transfers "for the benefit of the estate," 11 U.S.C. § 550(a) (Supp. III 1985), and any transfer avoided "is preserved for the benefit of the estate," *id.* § 551 (1982).

Thus, in exercising his statutory powers and recovering the money from First Security, the trustee was not standing in the debtor's place but was "acting in a representative capacity on behalf of all the creditors." *Merrill v. Abbott (In re Independent Clearing House Co.),* 41 B.R. 985, 999 (Bankr.D.Utah 1984). Because the bankruptcy trustee was not acting for the debtor when he recovered the money, he recovered it free and clear of any interest that may have attached had the debtor reacquired the property. His recovery of the money did not revive any trust the money may have been subject to before the transfer to First Security.

## V.

As the bankruptcy court recognized, that conclusion does not end the inquiry. The money was recovered. It is now property of the bankruptcy estate. The question now is whether Research–Planning has any better claim to it than other unsecured creditors.

As a general rule, "[w]here a wrongdoing trustee becomes bankrupt, the beneficiary's claim for damages will not be preferred unless the bankruptcy act expressly so provides." G.G. Bogert & G.T. Bogert, *supra* note 2, § 862 at 34 (rev. 2d ed. 1982). Research–Planning has pointed to no provision of the bankruptcy code that gives it preferred status over other unsecured creditors. *Cf.* 11 U.S.C. § 523(a)(4) (1982) (a discharge in bankruptcy does not discharge an individual debtor from any debt for "defalcation while acting in a fiduciary capacity").

■ However, if the money properly belongs to Research–Planning, it may be subject to a constructive trust in Research–

---

**8.** A chapter 11 debtor in possession can recover preferential transfers but only because the statute gives him the rights, powers and duties of a trustee. 11 U.S.C. § 1107(a) (Supp. III 1985). In other words, if a debtor can recover preferential transfers it is because he stands in the shoes of the trustee—not the other way around.

Planning's favor. *See CK Resources, Inc. v. Paiute Oil & Mining Corp.*, No. C–86–0119J, slip op. at 6 (D.Utah Oct. 21, 1986); *McAllester v. Aldridge (In re Anderson)*, 30 B.R. 995, 1013–15 (M.D.Tenn.1983) (constructive trust imposed on property the trustee recovered in an action to avoid certain transfers under 11 U.S.C. § 544). *See also Harter v. Harter, Inc. (In re Harter, Inc.)*, 31 Bankr. 1015, 1019 (D.Kan.1983) (a "trust by implication of law may be impressed on property of the bankruptcy estate"). Whether or not a trust will be imposed in a bankruptcy proceeding is determined by state law. *Toys "R" Us, Inc. v. Esgro, Inc. (In re Esgro, Inc.)*, 645 F.2d 794, 797 (9th Cir.1981).

Under Utah law, a court can impose a constructive trust on property in certain situations. "The usual circumstances which give rise to a constructive trust ... involve one unjustly profiting through fraud or the violation of a duty imposed under a fiduciary or confidential relationship." *Carnesecca v. Carnesecca*, 572 P.2d 708, 710 (Utah 1977) (citation omitted).

The court agrees with the bankruptcy court that this is not a proper case for a constructive trust because the trustee's holding of the recovered property for the benefit of First Capital's unsecured creditors is not inequitable; to the extent those creditors will profit by First Capital's breach of its fiduciary duty, their profiting is not unjust.

One could argue that Research–Planning should be entitled to the recovered money because, but for the transfers to First Security, Research–Planning would have been entitled to the money in First Capital's account, either as the owner of that money or as the beneficiary of a trust. *See supra* note 5 and accompanying text. Arguably, it would be inequitable to put the unsecured creditors in a better position than they would have been in before the transfers.

On the other hand, but for the bankruptcy and the subsequent preference actions, First Security would have been able to keep the money. Arguably, it would be inequitable to put Research–Planning in a better position than it would have been in before the trustee recovered the money through the exercise of his statutory avoiding powers.

The difficulty with this case is that one of two innocent parties must suffer. If Research–Planning is allowed to recover the money, First Security loses its interest in money it would otherwise have been entitled to but for the bankruptcy and would have been allowed to share in even after the preference action. If Research–Planning is *not* allowed to recover the money, however, it must bear the brunt of the loss caused by First Capital's defalcation.

The court believes that, on the facts of this case, the money should be shared pro rata by First Capital's unsecured creditors. Were it not for the trustee's extraordinary, statutory powers, the money could not have been recovered from First Security at all. The trustee's actions may have avoided the transfers to First Security, but they did so for a specific purpose, namely, "for the benefit of the estate." 11 U.S.C. §§ 550(a) (Supp. III 1985) & 551 (1982). The beneficiaries of the bankruptcy estate are the unsecured creditors, not the beneficiary of any trust the debtor may have breached.

The trustee was able to recover the transfers to First Security only because they preferred First Security over other unsecured creditors, not because they gave First Security money that rightfully belonged to Research–Planning. As between First Security and Research–Planning, First Security had the better claim to the money before bankruptcy. The trustee's avoidance powers were not meant to change that situation. They were meant to remedy only the first wrong (the preference of one creditor over others), not the second (the breach of fiduciary duty). Therefore, the court concludes that the recovery should be considered property of the bankruptcy estate, to be shared by all unsecured creditors.

This is not to say that a preference action may never have the effect of remedying a breach of fiduciary duty. The court does not hold that a constructive trust can

never be imposed on funds recovered through the exercise of the trustee's avoiding powers.

The trustee argues that the avoiding powers can never be used for the benefit of a particular creditor, implying that property recovered through the exercise of those powers can never be subject to a trust, either express or constructive. But in this case it was not the trustee's recovery of the money in the preference action that cut off Research–Planning's interest in the money but the transfer to First Security, a bona fide purchaser. If First Security were not a bona fide purchaser of the funds it received or if other unsecured creditors had knowingly participated in First Capital's breach of fiduciary duty, the result in this case might well be different. *Cf. McAllester v. Aldridge (In re Anderson),* 30 B.R. 995 (M.D.Tenn.1983) (constructive trust imposed on property recovered in an action to avoid certain transfers of deeds).

One might argue that in such a case the trustee should not be able to recover the money through the exercise of his avoiding powers because to do so would benefit one creditor at the expense of others, contrary to the policy of the bankruptcy code. *See* 4 *Collier on Bankruptcy* ¶ 550.02 n. 3 (L. King 15th ed. 1985) (money recovered for the bankruptcy estate is for the benefit of all unsecured creditors and generally not for the sole benefit of the debtor or of a particular creditor). *But see McAllester,* 30 B.R. at 1008–10 (allowing trustee to avoid transfers of property in which third parties claimed an "equitable interest").

The court does not reach the question of whether the trustee *should* recover the money in such a case or whether the transferee might have a good defense to the preference action. But the court notes that the trustee cannot always know when he undertakes a preference action whether the recovery might be subject to a trust. This is especially true of a constructive trust, which, in some jurisdictions, does not exist until a court says it does. *See* G.G. Bogert & G.T. Bogert, *supra* note 2, § 472 at 30–31 and cases cited therein. The possibility that the recovery might redound to the benefit of a single creditor is one factor the trustee should consider in deciding whether to bring an action to avoid and recover a transfer. However, what may seem like a recovery for only one creditor might actually benefit all. Under other facts, recovering money subject to a constructive trust might actually benefit other unsecured creditors by reducing the number and amount of unsecured claims against the estate, especially if the transferee has no claim against the debtor. *Cf. Centennial Indus., Inc. v. NCR Corp. (In re Centennial Indus., Inc.),* 12 B.R. 99 (Bankr.S.D.N.Y.1981) (recovery of preferences for a chapter XI debtor benefited unsecured creditors by increasing the likelihood that they would receive future payments under the plan of reorganization, even though all the recovery went to the debtor). In this case, imposing a constructive trust in favor of Research–Planning would just substitute First Security's unsecured claim for Research–Planning's and thus would not help other unsecured creditors. In each case, the trustee must consider all the relevant facts available to him and use his best judgment in deciding whether or not to challenge a particular transfer.

In short, the fact that the trustee successfully recovers a transfer does not of itself cut off third parties' equitable interests in the property recovered. But the court concludes that this case is not a proper case for reviving any extinguished trust or for imposing a constructive trust. Rather, First Capital's unsecured creditors should be able to share in the recovery pro rata.

Admittedly, this result is not wholly satisfactory. By its actions, First Capital has precluded the court from doing complete justice among all the parties. But Research–Planning, the party most wronged by First Capital's actions, is not left completely bereft. Presumably, it will share in the recovery along with other unsecured creditors. It may even have the largest claim of the unsecured creditors and therefore be entitled to the largest share of the money. In short, it is in a better position

than it was in before the bankruptcy, since before bankruptcy the money was completely lost as far as Research–Planning was concerned. At least now, it may recover some of the money.

One might argue that Research–Planning did not assume the risk that First Capital would become insolvent, as First Capital's unsecured creditors did, and therefore should be preferred to those creditors in bankruptcy. After all, Research–Planning could not have protected itself, as First Capital's creditors could have, by obtaining a security interest in the escrowed property because it was not First Capital's property to secure. But Research–Planning did not assume the risk of First Capital's bankruptcy because it was not a risk to Research–Planning. Had First Capital not absconded with the funds, Research–Planning would have been protected in bankruptcy. *See Gulf Petroleum, S.A. v. Collazo,* 316 F.2d 257, 261 (1st Cir.1963) (money held in escrow does not become property of the bankruptcy estate). First Capital's insolvency was not the proximate cause of Research–Planning's loss— its defalcation was. And that was a risk that Research–Planning—not the unsecured creditors—assumed.[9] Far from being a risk, First Capital's bankruptcy was a fortuity for Research–Planning. It gave Research–Planning a chance to recover a portion of money that was otherwise lost and gone forever. It is not inequitable to require Research–Planning to share that money with others.

For its argument that it is entitled to the recovered money, Research–Planning relies heavily on the case of *Angeles Real Estate Co. v. Kerxton (In re Construction General, Inc.),* 737 F.2d 416 (4th Cir.1984). To the extent that that case is not distinguish-

able from this case, this court declines to follow it.

For the reasons stated above, the court concludes that under the facts of this case, First Capital's unsecured creditors (which may include Research–Planning) should be entitled to share in the recovery pro rata. The judgment of the bankruptcy court is therefore AFFIRMED.

IT IS SO ORDERED.

---

**9.** Utah has adopted the Uniform Fiduciaries Act, Utah Code Ann. §§ 22–1–1 through –11 (1984), which was meant to relieve third parties who deal with a fiduciary from the duty of seeing that fiduciary funds are not misappropriated. *Sugarhouse Fin. Co. v. Zions First Nat'l Bank,* 21 Utah 2d 68, 440 P.2d 869, 870 (1968). Thus, Utah law

    places a duty upon principals to use only honest fiduciaries, and gives relief to those

who deal with fiduciaries except where they know the fiduciary is breaching his duty to his principal or where they have knowledge of such facts that their action in dealing with the fiduciary amounts to bad faith.

*Id. Cf. Guthrie v. Field,* 85 Kan. 58, 116 P. 217, 219 (1911) (when one of two innocent persons has reposed confidence in an escrow agent by giving him a deed executed in blank, he must bear the loss caused by the agent's dishonesty).