In re FIRST CAPITAL MORTGAGE
LOAN CORPORATION, a Utah
corporation, Debtor.

RESEARCH–PLANNING, INC., a Utah
corporation, Plaintiff–Appellant,

v.

Roger SEGAL, Trustee of First Capital
Mortgage Loan Corporation, a debtor,
Defendant–Appellee.

No. 87–1748.

United States Court of Appeals,
Tenth Circuit.

March 27, 1989.

Rehearing and Rehearing En Banc
Granted May 2, 1989.

Claron C. Spencer and Dale E. Anderson (with him on the briefs), of Spencer & Anderson, Salt Lake City, Utah, for plaintiff-appellant.

John T. Morgan and Julie A. Bryan (with him on the brief), of Cohne, Rappaport & Segal, P.C., Salt Lake City, Utah, for defendant-appellee.

Before SEYMOUR and SETH, Circuit Judges, and SEAY, Chief Judge.*

PER CURIAM.

This is an appeal from an order of the district court affirming the bankruptcy court's dismissal of the appellant's complaint, 99 B.R. 462. The facts of this case are fully set out in the bankruptcy court's opinion at 60 B.R. 915. We reiterate only those facts that are necessary to our disposition of this appeal.

The appellant, Research–Planning, Inc., argues that it was entitled to recover certain funds obtained by the appellee, Roger Segal, the trustee in bankruptcy for the estate of the First Capital Mortgage Loan Corporation, pursuant to his powers under 11 U.S.C. § 547(b) (1982 and Supp. IV 1986). The funds were originally held in trust by First Capital, pending the closing of a real estate transaction between Research–Planning and a third party. Prior to the closing, however, First Capital deposited the funds in its general account at the Bank of Utah in violation of its agreement with Research–Planning. The funds then were paid out of that account on checks to First Security, a bona fide purchaser, to cover certain preexisting obligations of First Capital, and the monies in First Capital's general account were thereby depleted. After First Capital was declared bankrupt, the trustee recovered a portion of the transfers made to First Security in settlement of a suit asserting a preference under the bankruptcy laws.

Research–Planning now contends that the funds so recovered are still its property and not part of the bankruptcy estate but instead are trust funds held by the debtor originating in the escrow agreement. *See Gulf Petroleum, S.A. v. Collazo*, 316 F.2d 257 (1st Cir.1963). Under § 541 of the Bankruptcy Code, such trust funds are not included in the bankruptcy estate, and the beneficiary of the trust is entitled to their return. *See In re Mahan & Rowsey, Inc.*, 817 F.2d 682, 684 (10th Cir.1987).

Research–Planning also argues that the recovered funds should be impressed with a constructive trust in Research–Planning's favor because it would be inequitable for the general creditors of the estate to profit from First Capital's misdeeds, at Research–Planning's expense. We do not reach the constructive trust issue.

After reviewing the record below and the argument and authorities presented by the parties, we are convinced the bankruptcy and district courts' disposition of this case was in error.

The trustee in bankruptcy was able to persuade First Security Bank, apparently in settlement of suits the trustee filed against the bank, to pay the amount in question to the trustee. The trustee had been able to demonstrate that the money came from the debtor originally, and there seems to be no question as to this source of the funds. The funds were held by the debtor who had control of them only pursuant to the escrow agreement with Research–Planning. The trial court took the position that the escrow agent had no title to the escrow funds, and if this is accepted there is no way they could be part of the debtor's estate. Under 11 U.S.C. § 547(b), the trustee only has authority to recover property in which the debtor has an interest. The escrow funds still were and are the property of Research–Planning.

It makes no difference how the trustee obtained the funds, and the fact he may have asserted they were received by First Security as a preference makes no difference. He obtained possession of the funds. The procedure in settling the preference

*Honorable Frank H. Seay, Chief Judge, United States District Court for the Eastern District of Oklahoma, sitting by designation.

suits did not change the ownership of the funds—only who had possession of them. They did not become part of the debtor's estate just because the trustee obtained possession. He has possession of property not part of the debtor's estate. He established the source of the funds—the debtor's escrow agreement. The trustee was able to identify the several transfers and payments and to so obtain possession of the funds. He may have obtained possession in his capacity as trustee, but again, this did not make the funds any more part of the debtor's estate than they were when in the original escrow.

The trial court's analysis does not recognize the basic ownership of the funds. Instead, by a series of applications of separate doctrines it is assumed that there was a metamorphosis as the funds were transferred depending on who had possession. However, the basic rights of the plaintiff did not change. First Security's status as a bona fide purchaser did not divest the plaintiff of ownership of the funds. Instead, it merely shielded First Security from any claim for the funds that the plaintiff might have asserted. First Security's status as a bona fide purchaser is irrelevant now that it no longer possesses the funds.

Again, the bankruptcy trustee followed the funds through the several changes in possession and the status of who was in possession from time to time. This was an interesting journey but it only becomes significant for our purposes when the funds came into the hands of the trustee. The record developed the origin of the funds as the escrow and the ownership in plaintiff. All of this demonstrated that the trustee in bankruptcy held the funds not as part of the estate but for the benefit of plaintiff.

REVERSED.

SEYMOUR, Circuit Judge, dissenting:

I respectfully dissent. I am convinced that the disposition of this case by the bankruptcy and district courts was correct.

The majority overlooks the fact that after Research–Planning's funds were deposited by First Capital into its general account with the Bank of Utah, all of the commingled funds in the account were depleted through a series of transactions. *See Research–Planning, Inc. v. Bank of Utah,* 690 P.2d 1130, 1131 (Utah 1984). Under long-standing rules, when commingled trust funds are wrongfully transferred by the trustee to a bona fide purchaser, the beneficiary of the trust cannot trace its trust funds into the hands of the bona fide purchaser. *Turley v. Mahan & Rowsey, Inc. (In re Mahan & Rowsey, Inc.),* 817 F.2d 682, 684 (10th Cir.1987). The beneficiary may only proceed against the trustee.

As in this case, where the trustee's transfer to a bona fide purchaser has depleted all of the funds in the commingled account, the beneficiary's only recourse against the trustee (First Capital) is a general claim for damages arising out of the trustee's misfeasance. *See 4 Collier on Bankruptcy* ¶ 541.13 at 541–76 to –77 (L. King 15th ed. 1988); G. Bogert & G. Bogert, *The Law of Trusts and Trustees,* 921 at 368–69 (2d ed. 1982). Consequently, from the time the funds in First Capital's general account were depleted, Research–Planning had only a general, unsecured claim against First Capital for the amount of the funds it had deposited into escrow with First Capital. With the advent of First Capital's bankruptcy, Research–Planning's position did not change. It remained a general, unsecured creditor of First Capital. *In re Mahan & Rowsey, Inc.,* 817 F.2d at 684; *see also* G. Bogert & G. Bogert, § 862 at 34.

The majority suggests that the trustee's subsequent recovery of certain funds from the Bank of Utah in settlement of a preference action was a recovery of Research–Planning's original escrowed funds which had never become a part of the bankruptcy estate. While it is true that funds held in trust by the debtor are not included in the bankruptcy estate, 11 U.S.C. § 541 (1982 & Supp. IV 1986), the beneficiary of the trust must be able to trace its funds into some assets held by the debtor at the time of bankruptcy. *See 4 Collier on Bankruptcy* ¶ 541.13 at 541–74 to –76. Research–Plan-

ning could not do this since its funds were transferred to a bona fide purchaser and no funds remained in the commingled account. That the bankruptcy trustee succeeded in obtaining some of these funds back from the Bank of Utah, for whatever reason, should not change Research–Planning's position as a general, unsecured creditor of First Capital. The bankruptcy trustee's powers are exercised for the benefit of the estate as a whole, not individual creditors. Consequently, it is not inequitable that Research–Planning should now be treated as a general creditor of the estate in bankruptcy.

For the reasons stated so aptly by the district court, I would affirm its order denying recovery of the funds to Research–Planning.