917 F.2d 424
 59 USLW 2247, 23 Collier Bankr.Cas.2d 1659,
Bankr. L. Rep. P 73,651
 In re FIRST CAPITAL MORTGAGE LOAN CORPORATION, a Utah
corporation, Debtor.
RESEARCH-PLANNING, INC., Plaintiff-Appellant,
v.
Roger G. SEGAL, Trustee of First Capital Mortgage Loan
Corporation, a Utah corporation, Defendant-Appellee.
 No. 87-1748.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 12, 1990.
Rehearing Denied Nov. 20, 1990.
 
 Claron C. Spencer and Dale E. Anderson, of Spencer & Anderson, Salt Lake City, Utah, for plaintiff-appellant.
 John T. Morgan and Julie A. Bryan, of Cohne, Rappaport & Segal, P.C., Salt Lake City, Utah, for defendant-appellee.
 Before HOLLOWAY, Chief Judge, and SETH, McKAY, LOGAN, SEYMOUR, MOORE, ANDERSON, TACHA, BALDOCK, BRORBY and EBEL, Circuit Judges.
 SEYMOUR, Circuit Judge.
 
 
 1
 This case presents the question whether funds placed in escrow with the debtor, who improperly used them to pay debts owed to a good faith creditor, constitute part of the bankruptcy estate when recovered by the trustee in settlement of a preference action.[1] A divided panel of our court reversed the decision of the bankruptcy and district courts and held that these funds never became part of the bankruptcy estate and thus were recoverable as funds held in trust for the escrow depositor. 872 F.2d 335. We granted rehearing en banc. We now vacate the panel decision and hold that the funds became part of the bankruptcy estate when they were recovered by virtue of the trustee's avoidance powers.
 
 I.
 
 2
 The facts are undisputed. In August 1980, plaintiff Research-Planning agreed to loan $260,000 to R.K. Buie and Associates for investment in real property. Research-Planning and Buie agreed in writing to use the debtor, First Capital Mortgage Loan Corporation, as escrow agent. On August 18, Research-Planning gave First Capital a $260,000 check made out to First Capital and Buie. First Capital obtained Buie's endorsement and deposited the check the next day in its general account at the Bank of Utah. Within the next week, the Bank of Utah honored two checks drawn on First Capital's general account, payable to First Security Bank of Utah, in the amounts of $66,000.00 and $2,489.66.[2] These checks had been returned for insufficient funds prior to the deposit of the escrow funds. First Capital had no authorization from Research-Planning to disburse the escrow funds to First Security and acted in violation of the escrow agreement. It is undisputed that First Security was a bona fide purchaser who gave value in exchange for the two checks written by First Capital.
 
 
 3
 First Capital subsequently was involuntarily placed into bankruptcy under Chapter 7 of the Bankruptcy Code, and defendant Roger Segal was appointed trustee. The trustee brought two adversary actions against First Security, claiming that the amounts paid to it were avoidable preferences. The trustee and First Security settled the preference actions, which settlements were approved by the bankruptcy court, and the trustee recovered $62,489.66.
 
 
 4
 After the trustee's recovery, Research-Planning brought the present action claiming that the amount recovered from First Security was subject to a trust in its favor, and was not available for distribution among creditors generally as part of the bankruptcy estate. In ruling for the trustee, the bankruptcy court held that Research-Planning lost its beneficial interest in the funds when they were transferred to First Security, a bona fide purchaser for value. When the funds were recovered by the trustee in settlement of the preference actions, they therefore became part of the estate, leaving Research-Planning with a general unsecured claim against the debtor for wrongful disbursement of the escrow funds. See Research-Planning, Inc. v. Segal (In re First Capital Mortgage Loan Corp.), 60 B.R. 915 (Bankr.D.Utah 1986).
 
 
 5
 On appeal the district court affirmed. See Research-Planning, Inc. v. Segal (In re First Capital Mortgage Loan Corp.), 99 B.R. 462 (D.Utah 1987). The district court noted that, as of the time of the bankruptcy, First Security's status as a bona fide purchaser for value meant that it held title to the funds free of any claims of Research-Planning arising out of its status as escrow depositor. First Security surrendered these funds to the trustee, not to First Capital, solely because the trustee is vested with federal avoidance powers designed to ensure evenhanded treatment among creditors of the estate. The court concluded that the special nature of the trustee's avoidance powers could not revive any beneficial or equitable claim to the funds favorable to Research-Planning without offending the avoidance powers' purpose of augmenting the estate for the benefit of all creditors. Id. at 468. The court noted that Research-Planning, with its unsecured creditor's claim, "is in a better position than it was in before the bankruptcy, since before bankruptcy the money was completely lost as far as Research-Planning was concerned. At least now, it may recover some of the money." Id. at 469-70.
 
 
 6
 On appeal, a divided panel reversed. Concluding that it made no difference how the trustee obtained the funds, the majority held that Research-Planning's beneficial ownership interest in the funds survived their transfer to First Security and became enforceable against the trustee upon this recovery. The majority therefore concluded that the recovered funds were not part of the bankruptcy estate but remained in trust for the benefit of plaintiff.
 
 II.
 
 7
 By definition, property held by the debtor in trust is not part of the bankruptcy estate. See 11 U.S.C. Sec. 541(d) (1988); Begier v. Internal Revenue Serv., --- U.S. ----, 110 S.Ct. 2258, 2263, 110 L.Ed.2d 46 (1990); Turley v. Mahan & Rowsey, Inc. (In re Mahan & Rowsey, Inc.), 817 F.2d 682, 684 (10th Cir.1987); see also United States v. Whiting Pools, Inc., 462 U.S. 198, 205 n. 10, 103 S.Ct. 2309, 2314 n. 10, 76 L.Ed.2d 515 (1983) ("We do not now decide the outer boundaries of the bankruptcy estate. We note only that Congress plainly excluded property of others held by the debtor in trust at the time of the filing of the petition"); 4 Collier on Bankruptcy p 541.13 (15th ed. 1990). The dispositive issue, then, is whether funds recovered by the trustee in settlement of preference liability constitute trust funds outside of the bankruptcy estate. If they are considered property of the estate, they are distributed among claimants in a Chapter 7 proceeding pursuant to 11 U.S.C. Sec. 726 (1988). If these funds once recovered are not part of the estate, then the trustee must surrender them to Research-Planning.
 
 
 8
 No serious controversy exists that the escrow agreement and the parties' actions created a type of trust relationship between the debtor and Research-Planning. See Gulf Petroleum, S.A. v. Collazo, 316 F.2d 257, 261 (1st Cir.1963) (escrowed funds remaining in possession of bankrupt held in trust and not for general creditors). Rather, the dispute centers upon the legal effect of two of several transactions involving the funds subsequent to the creation of the trust relationship.
 
 
 9
 The first relevant transfer occurred when the redeposited checks drawn on the debtor's general account at Bank of Utah to First Security were honored with the escrow funds. Both parties agree that First Security, having no notice of the origin of the funds, acted in good faith and also gave value in exchange for the funds received. The legal effect of this transfer is clear and also is not seriously disputed. Once the funds were transferred to a bona fide purchaser for value, neither the debtor nor Research-Planning had any claim to them. See In re Mahan, 817 F.2d at 684; Peterson v. Peterson, 112 Utah 554, 190 P.2d 135, 138-39 (1948); 13 G.G. Bogert & G.T. Bogert, The Law of Trusts & Trustees Sec. 881, at 165 (rev. 2d ed.1982). Research-Planning did, however, retain a cause of action against the debtor for breach of the escrow agreement and for breach of its fiduciary obligation in disbursing the escrow funds. Moreover, in the event the funds were returned to the debtor or to a third party transferee of the debtor with notice of the breach, Research-Planning would have an action for restitution. See 13 Bogert, The Law of Trusts & Trustees Sec. 881, at 163-64.
 
 
 10
 The more controversial transaction occurred when the bankruptcy trustee recovered some of the funds from First Security in settlement of the preference actions. See 11 U.S.C. Sec. 547(b). The panel majority opinion in essence adopted Research-Planning's argument that the trustee's recovery amounted to a return to the debtor's successor, in effect "reviving" the trust and creating an equitable obligation upon the bankruptcy trustee to return the funds. Because in its view the funds in the hands of the trustee became charged with this obligation, the majority concluded the funds cannot properly be considered part of the bankruptcy estate.
 
 
 11
 We begin our analysis of this transaction with the relevant provisions of the Bankruptcy Code. Section 541 provides that the bankruptcy estate "is comprised of all the following property, wherever located and by whomever held: .... Any interest in property that the trustee recovers under section ... 550 ... of this title." Id. Sec. 541(a)(3) (emphasis added). Section 550(a) of the Code provides in turn: "To the extent that a transfer is avoided under section ... 547 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred." Id. Sec. 550(a) (emphasis added). Section 547, by virtue of which the trustee recovered the funds at issue, provides the trustee with the power to avoid transfers of the debtor's property, made while insolvent, for the benefit of a creditor, in payment of an antecedent debt where it is made within specified periods of time prior to bankruptcy. See id. Sec. 547(b).
 
 
 12
 The statutory language emphasized above makes plain that such property is recovered "for the benefit of the estate." Id. Sec. 550(a). In addition, section 541 specifically defines this property as part of the bankruptcy estate. Starting from the premise that property recovered in a court-approved settlement of a preference action is treated similarly to property recovered after judgment on the same action, a conclusion that such property is not part of the estate does violence to the unambiguous language of the Code.
 
 
 13
 As a practical matter, moreover, we do not think it equitable that one general unsecured creditor of the bankruptcy estate should be made whole by virtue of the exercise of the trustee's avoidance powers while others must make do with their share of the bankruptcy estate under section 726. Indeed, if such a result attended the exercise of the trustee's preference powers, Congress' purpose in granting the power would be frustrated:
 
 
 14
 "[T]he preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally."
 
 
 15
 H.R.Rep. No. 595, 95th Cong., 2d Sess. 177-78, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6138 (emphasis added); see also Begier, 110 S.Ct. at 2262-63; Delgado Oil Co. v. Torres, 785 F.2d 857, 861 (10th Cir.1986) (purpose of preference power is to enable equitable distribution to all creditors).
 
 
 16
 Had the debtor not been involuntarily placed into bankruptcy, and had the trustee not decided to initiate the preference proceedings, neither Research-Planning nor the debtor would have had any claim against First Security. As a bona fide purchaser for value, First Security owned the funds. When the trustee recovered them from First Security, it was subrogated to the interests of the transferee, that is, of First Security. See 11 U.S.C. Sec. 551; see also C & C Co. v. Seattle First Nat'l Bank (In re Coal-X Ltd. 76), 60 B.R. 907, 911 (Bankr.D.Utah 1986); In re Vermont Fiberglass, Inc., 44 B.R. 505, 511 (Bankr.D.Vt.1984); Staats v. Barry (In re Barry), 31 B.R. 683, 686 (Bankr.S.D.Ohio 1983). We are aware that this case presents us with the anomalous situation where the transferee possesses greater rights in the property than the transferor.[3] But this feature of state law does not militate against the application of what the bankruptcy court below termed "overriding expressions of federal policy" in favor of creditor equality found in sections 547, 550, and 551.[4] In re First Capital, 60 B.R. at 920.
 
 
 17
 The Supreme Court's recent decision in Begier is not to the contrary. In that case the debtor, a commercial airline, was required by the Internal Revenue Code to withhold federal income and Federal Insurance Contributions Act taxes from its employees' wages, as well as excise taxes collected on behalf of the IRS from its customers. By operation of statute, these funds were held in trust for the United States. See 110 S.Ct. at 2261; 26 U.S.C. Sec. 7501 (1988). Within the preference period, the debtor paid funds so held to the Internal Revenue Service, the beneficiary of the statutory trust. Id. at 2262. The Court held that these payments to the trust beneficiary were not avoidable as preferences under section 547(b). Central to the Court's holding was the special nature of the trust created under federal law which, contrary to a trust created under state law, required no identifiable trust corpus for its existence. Consequently, the traditional rules concerning the tracing of funds commingled with the debtor's own property were modified. Under the federal trust in Begier, any payment of trust-fund taxes was conclusively presumed to be a transfer of money held in trust. Id. at 2267.
 
 
 18
 The instant case, unlike Begier, does not involve the question of whether the transfer of funds by the debtor amounted to a preferential transfer. By virtue of the settlement with First Security, we must assume that the trustee recovered the funds under the bankruptcy avoidance powers. The issue in this case is, rather, the character of the funds once they are recovered as preferential payments.
 
 
 19
 Research-Planning places great reliance on Angeles Real Estate Co. v. Kerxton (In re Constr. Gen., Inc.), 737 F.2d 416 (4th Cir.1984). In Angeles Real Estate, Angeles sued the bankruptcy trustee to recover one-half the proceeds of a note held by the debtor which the debtor failed to convey to Angeles Real Estate as assignee. Instead, the debtor used the proceeds to pay an antecedent debt, which funds the trustee recovered as a preference. The court applied Maryland law and concluded that the debtor conveyed its legal interest in the proceeds to Angeles Real Estate when it executed the assignment.
 
 
 20
 "The trustee has stipulated that [the debtor] used the actual funds collected on the note to pay the bank. It follows that recovery of the preference was a recovery of those same funds. In these circumstances, Angeles is entitled to its half of the funds, for Maryland law dictates that a prior specific lien is superior to the general lien of a judgment creditor."
 
 
 21
 Id. at 419. The Fourth Circuit panel did not discuss whether, under Maryland law, Angeles Real Estate would have had any claim to the funds in the hands of the third party creditor from whom the trustee recovered the funds as an illegal preference. The court also did not address the impact of the clear statutory language in the Bankruptcy Code indicating that funds recovered as a preference inure to the benefit of the estate. Finally, the court did not address why Angeles Real Estate should be the sole beneficiary of the exercise of the trustee's extraordinary avoidance powers. We therefore think the court's conclusion is flawed, and we decline to follow it.
 
 III.
 
 22
 We conclude that the funds recovered by the trustee in settlement of his preference actions comprised part of the bankruptcy estate. The panel decision is vacated and the district court's decision is AFFIRMED.
 
 SETH, Circuit Judge, dissenting:
 
 23
 I must respectfully dissent from the majority opinion.
 
 
 24
 This appeal concerns a deposit in escrow of funds made by plaintiff with the bankrupt which was acting as an escrow agent in a real estate transaction. The plaintiff's funds in the hands of the escrow agent were without question trust funds held for a particular purpose.
 
 
 25
 These same trust funds, after several transfers, came into the hands of the defendant Trustee in Bankruptcy who had traced them through the transfers. The plaintiff seeks to recover this escrow deposit from the defendant Trustee in Bankruptcy. The defendant argues that the funds are part of the general bankrupt estate for general creditors.
 
 
 26
 The several transfers were briefly as follows: after the escrow was established, plaintiff's escrowed funds were deposited by the agent in its general bank account in a third party bank. This bank paid out the funds in payment of obligations of the escrow agent. These disbursements included payments to the First Security Bank, and which depleted the account of the escrow agent. The escrow agent was thereafter declared bankrupt.
 
 
 27
 The defendant Trustee skillfully traced the escrow funds through the transactions to the First Security Bank, and filed suit against it seeking to obtain the funds on the theory that they were part of the bankrupt's estate having been paid to First Security as a preference; this, although he knew the source of the escrow funds, and, as mentioned, had traced them to First Security. The suit was presumably filed by the Trustee in Bankruptcy under 11 U.S.C. Sec. 547(b). There was no adjudication of any issues raised in the suit. There was only a settlement which the court approved. First Security had apparently decided to handle the matter on a voluntary basis and paid the funds to the Trustee without contesting the claims. Nothing was litigated, certainly not the source of the funds.
 
 
 28
 It is reasonable to characterize the defendant Trustee's action against First Security as an "assertion" of avoidance powers, but the record demonstrates that in fact and in law he had no such power as to these funds in these circumstances. He had no such power because the record also demonstrates that the funds were never owned by the bankrupt and never part of the bankruptcy estate. The defendant Trustee well knew their origin. It is difficult to see how there could be a preferential payment of trust funds.
 
 
 29
 The majority in its opinion, in footnote 3, states:
 
 
 30
 "Significant authority exists for the proposition that an escrow holder is an agent with neither legal nor equitable title to the funds it holds in escrow." (Citations omitted.)
 
 
 31
 We agree with this observation as applied to bankruptcy concepts in these circumstances. The bankrupt was a trustee. See United States v. Whiting Pools, Inc., 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515. The funds were not part of the bankrupt's property originally and did not become part of the estate solely by reason of the defendant Trustee's possession obtained the way it was and with his knowledge. It makes no difference, as the majority would rely upon, that the plaintiff may not have had a remedy against some of the intermediate possessors of the funds nor a remedy against First Security. The presence or absence of such a remedy does not affect the merits of issues between the parties to this action. The absence of a remedy did not destroy the trust character of the funds as between the parties here. The funds are now in the hands of the defendant, and the adventures they may have had on the trip there make no difference. The majority states in its opinion after referring to the Begier case (at 429):
 
 
 32
 "The issue in this case is, rather, the character of the funds once they are recovered as preferential payments." (Emphasis in original.)
 
 
 33
 The majority argues at some length the nature of the title of First Security to the funds, but this would seem to make no difference now to the majority under the statement of the issue so expressed. It is a non-issue. Also, if this is the issue, and the trial court and the bankruptcy court apparently used the same point, the funds when in the defendant's hands ipso facto became part of the estate of the bankrupt. The fact that suit was filed under Sec. 547(b) and the funds were paid to defendant becomes enough without more under their theory. The mere fact of "recovery," thus the filing of a preference suit, is enough regardless under this approach. As the majority states (at 427) in substance, and referring to Sec. 550 and Sec. 547, that the statute provides that any property recovered under a claim asserting Sec. 550 automatically becomes part of the estate regardless, and "a conclusion that such property is not part of the estate does violence to the unambiguous language of the Code." "Such property" is thus "any property" no matter its character or origin.
 
 
 34
 In my view however there is a more fundamental problem. There must be some consideration given to the circumstances in which the defendant Trustee found himself when he sought possession of the escrow funds and when he gained possession. Thus, what was his knowledge of their origin; whether in fact the bankrupt was ever the owner of the funds; was there a preference payment, and, if so, was it of trust funds; and was the filing of the Sec. 547 action just a chance which worked to obtain a voluntary payment. Again, the bare fact that suit was filed and that the funds were paid cannot be enough in these circumstances to launder the trust out of the funds in the hands of the Trustee in Bankruptcy. This is all that the majority would require, but this cannot be enough. The defendant Trustee in Bankruptcy should not be allowed to convert known trust funds originally in the possession of the bankrupt into part of the bankruptcy estate contrary to established doctrines for the protection of trust funds, and no matter how much power he attempts to assert under his avoidance powers against whoever may be in possession of the funds.
 
 
 35
 There would seem to be no necessity to discuss the statutory authority (11 U.S.C. Sec. 541(d)) directing the protection of trust funds in the hands of a bankrupt nor the decisions implementing these admonitions. See, however, Begier v. Internal Revenue Service, --- U.S. ----, 110 S.Ct. 2258, 110 L.Ed.2d 46. We have, of course, held, as the majority recognizes, that trust property in the hands of the debtor cannot be part of the bankruptcy estate. Turley v. Mahan & Rowsey, 817 F.2d 682 (10th Cir.).
 
 
 36
 The Trustee in Bankruptcy takes the position that his recovery of the escrow funds, which the plaintiff may or may not have been able to recover from First Security, was somehow an accommodation to plaintiff in that plaintiff can now share his transmuted escrow funds with the general creditors of the bankrupt.
 
 
 37
 I would reverse.
 
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument
 
 
 [2]
 The remaining balance of the funds making up the escrow was disbursed by the debtor and presumably never recovered by Research-Planning
 
 
 [3]
 The debtor had lawful possession of the funds which enabled it to misappropriate them to pay off its debt to First Security. Significant authority exists for the proposition that an escrow holder is an agent with neither legal nor equitable title to the funds it holds in escrow. See Tucker v. Dr. P. Phillips Co., 139 F.2d 601, 603 (5th Cir.1943); 1 G.G. Bogert & G.T. Bogert, The Law of Trusts & Trustees Sec. 15, at 173-74 & n. 46 (citing cases) (rev. 2d ed.1984). The transferee, First Security, by contrast, obtained full legal and equitable title to the funds under state law by virtue of the protection accorded bona fide purchasers for value. See Utah Code Ann. Sec. 22-1-5 (1984); Sugarhouse Fin. Co. v. Zions First Nat'l Bank, 21 Utah 2d 68, 440 P.2d 869, 870 (1968) (third parties dealing with breaching fiduciaries protected unless they have notice of breach)
 
 
 [4]
 These same considerations dispose of Research-Planning's argument that funds so recovered should be retroactively impressed with a constructive trust under state law for its sole benefit