In the Matter of FELTON'S FOODWAY, INC., Debtor.

AMERICAN EXPRESS TRAVEL RELATED SERVICES CO., INC., Plaintiff,

v.

FELTON'S FOODWAY, INC., Defendant.

Bankruptcy No. 83–1757.
Adv. No. 84–146.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

March 8, 1985.

Robert H. Beusing, Tampa, Fla., for plaintiff.

Raymond C. Farfante, Jr., Tampa, Fla., for defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the immediate matter under consideration involves an adversary proceeding commenced by American Express Travel Related Services Company, Inc. (American Express) against Felton's Foodway, Inc., the Debtor in the above-styled case. American Express filed a Complaint titled Complaint for Abandonment of Property of the Estate in which it

seeks the entry of an Order directing the Debtor to "abandon" funds in the amount of $95,744.21 which allegedly are held by the Debtor in trust for American Express. Although the proper complaint under the circumstances would have been a Complaint to Recover Money, the Debtor timely filed an answer and American Express filed a Motion for Summary Judgment, the matter currently under consideration. Thus, despite the fact that the Complaint is improper, as filed, the Court shall treat the same as a Complaint to Recover Money and consider the Motion for Summary Judgment. The Motion is based on the contention by American Express that there are no genuine issues of material fact and the controversy may be resolved as a matter of law.

The undisputed facts as established by the Motion, depositions and affidavits may be briefly summarized as follows: On August 5, 1980, American Express and the Debtor entered into an agreement whereby the Debtor was authorized to sell American Express money orders. The Agreement provides in pertinent part:

> Agent accepts appointment as such trustee and agent and agrees ... to hold for the account of and IN TRUST for American Express, and entirely separate and apart from other funds, all money received by Agent representing the face amount of money orders sold by Agent plus the American Express share of all customer charges (hereinafter collectively called the Trust Funds); ...

The Debtor, pursuant to the agreement, sold American Express money orders and deposited the proceeds in a general account at the Hillsboro Bank in Plant City. At the time the Debtor filed its Petition for Relief, the Debtor owed to American Express the sum of $95,744.21. Immediately prior to filing its Petition, the Debtor closed the Hillsboro general bank account and transferred the funds on deposit to a new general account at People's Bank. Approximately one week later, the Debtor opened a debtor-in-possession account at Hillsboro Bank and transferred its funds from the People's Bank to the DIP account.

The record reveals that the original general account at Hillsboro Bank was used by the Debtor pre-petition to pay virtually all expenses associated with the operation of the business. The general procedure for payment of monies to American Express appears to have been the following:

Money orders were sold in individual stores operated by the Debtor and the proceeds were then deposited into the general bank account. Each Monday, a report was filed in the Debtor's main office regarding sums collected by the individual stores during the previous business week. On the following Wednesday or Thursday, the Debtor would inform American Express of the amounts collected. Thereafter, American Express would draw a draft on the Debtor's account in the amount shown on the Debtor's report. (Dep. of Leland Williams at 5–6). It appears that this procedure was followed throughout the course of the agreement.

The record reveals that on December 15, 1982, the draft submitted by American Express was dishonored by the Hillsboro Bank, as were several drafts drawn thereafter. In March, 1983, American Express terminated its relationship with the Debtor and on August 22, 1983, the Debtor filed its Chapter 11 Petition. These are the uncontroverted facts as appear from the Motion depositions, and affidavits submitted in support of the Motion. Although the Debtor filed the affidavit of Felton Williams, president of the Debtor, in opposition to the Motion, it has no bearing on the facts except to establish the balance of the DIP account on June 12, 1984.

Based on the foregoing, it is the position of American Express that it is entitled to restitution in the amount of $62,818, the balance in the DIP account as of June 12, 1984. American Express contends that even though the trust funds were deposited in a general account rather than segregated as provided per agreement, American Express has traced the trust funds into the original account and then, to the subsequent accounts opened by the Debtor.

It is the Debtor's contention that while American Express may be entitled to recover a portion of the amount owed, it is entitled only to the sum which represents the lowest balance in the general bank account *since* the filing of the Petition.

 It is well established that where a Debtor holds property impressed with a valid trust, the estate will generally hold that property subject to the interest of the beneficiary. *Pearlman v. Reliance Insurance Co.*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962); *Selby v. Ford Motor Co.*, 590 F.2d 642 (6th Cir.1979); *see, In re Columbia Pacific Mortgage, Inc.*, 20 B.R. 259 (Bankr.W.D.Wash.1981); *See also, U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309 n. 10, 76 L.Ed.2d 515 (1983). However, the claimant has the burden to establish (1) the trust relationship (2) identify the trust fund and (3) sufficiently trace the fund where it has been commingled with funds of the Debtor. *Sonnenschein v. Reliance Insurance Co.*, 353 F.2d 935 (2d Cir.1965); 4 *Collier on Bankruptcy*, ¶ 541.13 (15th ed. 1983). Once the validity of the trust is established and, in the case of commingled funds, the funds are sufficiently traced, the bankruptcy trustee, or debtor-in-possession shall be directed to turn over the property. 4 *Colliers on Bankruptcy, supra.*

A problem arises, however, where the trust funds have been traced into a general bank account of the Debtor. Under these circumstances:

> ... the bankruptcy court will follow the trust fund and decree restitution where the amount of the deposit has at all times since the intermingling of the funds equaled or exceeded the amount of the trust fund. But where, after appropriation and mingling, all of the moneys are withdrawn, the equity of the cestui is lost, although monies from other sources are subsequently deposited in the same account. *In the intermediate case where the account is reduced to a smaller sum than the trust fund, the latter must be regarded as dissipated, except as to the balance, and funds subsequently added from other sources cannot be subjected to the equitable claim of the cestui que trust.* If new money is deposited before the balance is reduced, the reduction should be considered to be from the new money and not from the monies held in trust. This analysis may be referred to as the lowest intermediate balance test.

4 *Colliers on Bankruptcy*, ¶ 541.13 (15th ed. 1983).

In the case at bar, there is no doubt that by valid agreement, the Debtor held the funds generated from the sale of money orders in trust for American Express; and, although the Debtor deposited these funds into its general account, there is no assertion that American Express consented to that arrangement or waived its rights under the agreement. It is equally evident that the trust funds have been sufficiently traced into a general bank account at Hillsboro Bank; from the Hillsboro account to a general account in People's Bank; and ultimately, from the People's account into the DIP account.

As noted earlier, the Debtor contends that at most, American Express is entitled to receive the lowest balance in the general account *since* the filing of the Petition. American Express claims entitlement to the sum of $62,818, or the balance of the DIP account on June 12, 1984, as established by the affidavit of Felton Williams filed in this Court on June 13, 1984. This Court is satisfied that neither the Debtor nor American Express have applied the "lowest intermediate balance test" accurately in order to determine the proper sum payable to American Express.

The Debtor and American Express established a trust relationship on August 5, 1980 and for more than two years, the parties operated under an agreed procedure without apparent difficulty. On December 15, 1982, the Debtor's account held insufficient funds to honor the drafts submitted by American Express and in March, 1983, American Express terminated the relationship. On August 22, 1983, the Debtor filed its Petition.

The first question which must be resolved, is what portion of the commingled funds constituted trust funds at the time the petition was filed and the Bankruptcy estate created. Clearly, those funds which were held in trust at the time of the Petition did not become property of the estate and those funds not subject to the trust passed into the bankruptcy estate. Of course, the critical time to determine which property constitutes property of the estate pursuant to § 541(a) of the Bankruptcy Code and to adjust the rights of those claiming against the estate, is the date of filing.

This Court is satisfied that to determine the amount payable to American Express, it is appropriate to apply the "lowest intermediate balance test" to the general bank accounts (that is, the original account and the People's Bank account) maintained by the Debtor between December 15, 1982, the first date on which the Debtor had insufficient funds to honor the American Express draft, and August 22, 1983, the date of the Chapter 11 petition. Those sums which are ultimately determined to constitute trust funds on the date of filing must be remitted to American Express. Likewise, American Express shall be accorded the status of a general unsecured creditor with regard to the balance of the obligation.

Inasmuch as the record fails to provide the balances on the relevant dates, the parties shall provide that information to the Court by stipulation or otherwise. In the event there is no stipulation, the matter shall be determined by the Court at a hearing upon proper notice. Thus, while it is appropriate to the grant the Motion for Summary Judgment, the amount, if any, to be turned over to American Express must be determined in accordance with the foregoing. Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment filed by American Express be, and the same hereby is, granted. It is further

ORDERED, ADJUDGED AND DECREED that American Express is entitled to recover an amount equal to the lowest balance in the Debtor's general bank accounts, as described above, between the dates of December 15, 1982 and August 22, 1983. The exact amount shall be submitted to the Court by stipulation, or in the absence of a stipulation, a hearing shall be scheduled upon proper motion and notice at which time the Court shall make the determination. It is further

ORDERED, ADJUDGED AND DECREED that the balance of the debt which American Express is not entitled to recover as trust funds shall be treated as a general unsecured claim.