In re FIRST CAPITAL MORTGAGE
LOAN CORPORATION, a Utah
corporation, Debtor.

RESEARCH–PLANNING, INC., a Utah
corporation, Plaintiff,

v.

Roger G. SEGAL, Trustee of the estate
of the above-named debtor, Defendant.

Bankruptcy No. 80C–02006.
Civ. No. 84PC–0129.

United States Bankruptcy Court,
D. Utah.

May 5, 1986.

Roger G. Segal, Cohne, Rappaport & Segal, Salt Lake City, Utah, pro se as trustee.

Claron C. Spencer, Beesley, Spencer & Fairclough, Salt Lake City, Utah, for plaintiff, Research-Planning, Inc.

### MEMORANDUM OPINION

GLEN E. CLARK, Bankruptcy Judge.

### FACTS AND PROCEDURAL BACKGROUND

This matter came before the Court for trial on September 7, 1984, on the verified complaint of Research-Planning, Inc., a Utah corporation ("Research-Planning"). The plaintiff claims that funds recovered by the trustee in the exercise of his preference avoidance powers are subject to a trust in its favor. The somewhat unusual facts of this case, slightly simplified, were stipulated as follows.

On or about August 18, 1980, pursuant to a written agreement, the plaintiff, Research-Planning, placed $260,000.00 in the form of a cashier's check in escrow with the debtor, First Capital Mortgage Loan Corporation ("First Capital"). The funds were delivered to First Capital and held by it in trust for Research-Planning. On or about August 19, 1980, First Capital deposited the cashier's check into its account at the Eagle Gate Branch of the Bank of Utah. On August 19 and 25, 1980, those funds were used to pay two checks to First Security Bank of Utah in the amounts of $66,000.00 and $2,489.66, which checks had been drawn on insufficient funds prior to the receipt of the trust funds from Research-Planning. First Security Bank was a bona fide purchaser which gave value for the two checks issued to it by the debtor.[1] The checks to First Security Bank were paid without authorization from Research-Planning and in violation of the escrow agreement.

On or about October 9, 1980, an involuntary petition under Chapter 7 of the Bankruptcy Code was filed against First Capital. An order for relief was entered on October 15, 1980 and Roger G. Segal was appointed trustee. Subsequently, the trustee commenced litigation to recover the $66,000.00 payment and the $2,489.66 payment from First Security Bank as voidable preferences pursuant to Section 547(b) of the Bankruptcy Code. In settlement of that litigation, upon notice to creditors and with the approval of this Court, the trustee recovered the sum of $62,489.66 from First Security Bank.

### CLAIMS OF THE PARTIES

Plaintiff claims that the settlement proceeds are trust property traceable to the funds it deposited in escrow with the debtor. It argues that unless those proceeds are impressed with a trust in its favor, the creditors in this bankruptcy case will be unjustly enriched. Further, it contends that the tracing requirement has been satisfied because the funds in issue have gone from the plaintiff to the debtor, to First Security Bank, and, through exercise of the avoiding powers, back again. The trustee claims that (1) a constructive trust did not exist at the time the funds were recovered from First Security Bank in settlement of the preference action, because a constructive trust is a judicially-created remedy which does not come into existence until imposed by a court of equity; and (2) the court should not impress a constructive trust upon the settlement proceeds because to do so would defeat the very object of the preference avoidance power, namely, to secure an equal distribution of the debtor's assets among all of its creditors. The trustee contends that the express trust was extinguished when the trust funds were received by First Security Bank; at that point the trust funds were no longer traceable and Research-Planning became merely an unsecured creditor.

### DISCUSSION

■ Where a bankruptcy trustee holds property impressed with a valid trust, the estate will generally hold the property subject to the interest of the beneficiary. The legislative history of Section 541 offers

---

**1.** *See* RESTATEMENT (First) RESTITUTION § 172(1) (1937).

some insight as to the manner in which trust funds are to be dealt with in bankruptcy:

> Situations occasionally arise where property ostensibly belonging to the debtor will actually not be property of the debtor, but will be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in a constructive trust for the person to whom the bill was owed.

S.Rep. No. 95–989, 95th Cong., 2d Sess. 82 (1978), *reprinted in* 1978 U.S.Code Cong. Admin.News, pp. 5787, 5868; H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 368 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News, pp. 5787, 6324.

 Money held in escrow by a debtor may constitute a trust fund for those entitled to it. *See Stickney v. General Electric Co.*, 44 F.2d 362, 365–66 (4th Cir.1930). However, it is the claimant's burden to (1) establish the trust relationship; (2) identify the trust funds; and (3) sufficiently trace the funds where they have been commingled with other funds. Once the validity of the trust is established and, in the case of commingled funds, the funds are sufficiently traced, the trustee will be directed to turn over the property. *Matter of Felton's Foodway, Inc.*, 49 B.R. 106, 108, 13 B.C.D. 91 (Bkrtcy.M.D.Fla.1985). But where a trust is created and the whole of the trust property ceases to exist because the trustee wrongfully disposed of such property, the trustee no longer holds anything in trust. In such a case, the trustee is personally liable to the beneficiary, but if the trustee is insolvent the beneficiary is not entitled to priority over general creditors of the trustee. RESTATEMENT (Second) TRUSTS § 74, Comment *c* (1959). Section 215(1) of the Restatement of Restitution (1937) provides that "where a person wrongfully disposes of the property of another but the property cannot be traced into any product, the other has merely a personal claim against the wrongdoer and cannot enforce a constructive trust or lien upon any part of the wrongdoer's property."

Plaintiff's tracing argument fails because the debtor disposed of the trust funds in such a way as to leave no "product." *See* G. Bogert, THE LAW OF TRUSTS AND TRUSTEES § 921, at 368–69 (rev.2d ed. 1982). The trustee's settlement proceeds are not the "product" of Research-Planning's "property" within the meaning of Section 215(1).[2] Once the escrow funds were disbursed, Research-Planning had a claim against the debtor's estate for disbursing those funds out of trust, but that claim makes the plaintiff only a general unsecured creditor without priority. *See Merrill v. Dietz (In re Universal Clearing House Company)*, memorandum decision and order, 62 B.R. 118 (D.Utah 1986) (per Winder, J.).

 The next point to be considered is whether the facts stated are sufficient to establish the existence of a constructive trust. A constructive trust is a remedial device utilized by a court of equity in a wide variety of situations. The unjustly deprived person, in this case Research-Planning, is labeled the "constructive beneficiary." The trust property is conveyed to the constructive beneficiary pursuant to an *in personam* order given by the court of equity to the "constructive trustee," who

---

**2.** As Professor Bogert observes:

> Perhaps the most common situation which the beneficiary or his representative encounters when he seeks to trace trust funds is the case where the trustee has paid his own creditors with trust funds and the question arises whether there can be tracing as to the funds thus used. It would seem evident that there should not be tracing, since the result of the transaction is negative; it relieves the trustee from a burden but does not produce any property which could be said to be a substitute for, or product of, the trust funds which were misappropriated. This view has met with the approval of many well-reasoned decisions and tracing has been denied.

G. Bogert, THE LAW OF TRUSTS AND TRUSTEES § 922, at 374 (rev. 2d ed. 1982).

would in this case be the Chapter 7 trustee. The constructive trustee is an *actual* trustee only if he already occupies a fiduciary relationship to the beneficiary. Where, as here, the constructive trust device is sought merely to remedy a situation of alleged unjust enrichment and there is no underlying fiduciary relationship, the "trustee" performs the role in name only, and is charged with the sole duty of conveying the trust property to the beneficiary. The imposition of a constructive trust requires proof of three elements: (1) a wrongful act; (2) specific property acquired by the wrongdoer which is traceable to the wrongful behavior; and (3) an equitable reason why the party holding the property should not be allowed to keep it. *Merrill v. Abbott (In re Independent Clearing House),* 41 B.R. 985, 1000, 12 B.C.D. 44, 11 C.B.C.2d 196 (Bkrtcy.D.Utah 1984). The burden of establishing the existence of facts upon which a constructive trust will be declared is on the party seeking the declaration. *In re Morales Travel Agency,* 667 F.2d 1069, 1071 (1st Cir.1981); *In re Morris,* 45 B.R. 350, 353, 12 B.C.D. 897 (E.D.Pa.1984). *See* 4A COLLIER ON BANKRUPTCY ¶ § 70.25[1], at 342 (14th ed. 1978).

In this case, it is obvious that the debtor breached its contractual, fiduciary and other duties to Research-Planning by using the escrow funds to pay an antecedent debt to First Security Bank. But in dealing with fraud-based applications of the constructive trust doctrine, the Court must be mindful of the basic bankruptcy policy of treating general creditors equally. *See In re North American Coin & Currency,* 767 F.2d 1573, 1575, 1577–78, Bankr.L.Rep. (CCH) ¶ 70,691 (9th Cir.1985), *modified* 774 F.2d 1390 (1985), *cert. denied sub nom. Torres v. Eastlick,* —— U.S. ——, 106 S.Ct. 1462, 89 L.Ed.2d 719 (1986).

In *In re General Coffee Corp.,* 41 B.R. 781, 12 B.C.D. 345 (Bkrtcy.S.D.Fla.1984), City National Bank of Miami sought the imposition of a constructive trust on the assets of a Chapter 11 debtor based on allegations of fraud, conversion, breach of fiduciary duty, and unjust enrichment. At trial, the bank proved that funds used by the debtor to expand its coffee roasting business had been wrongfully acquired from it through a fraudulent scheme. The court found from the evidence the factual basis to justify imposition of a constructive trust. However, the bankruptcy court held that the strong-arm clause, Section 544(a) of the Code, gives the trustee or debtor in possession the power to avoid a constructive trust imposed upon assets of the estate after the date of filing.

Congress has resolved through § 544 that the debtor's creditors must at all costs be protected from secret liens. The Florida court has resolved that a constructive trust remains a secret lien until it is imposed by a court. In this case, plaintiffs neither sought nor obtained relief in time to avoid the impact of these two controlling policy determinations which are binding upon the court.

*Id.* at 784.

In another recent decision, the Court of Appeals for the Ninth Circuit cautioned against the expansive use of the constructive trust doctrine in bankruptcy at the expense of general creditors. *In re North American Coin & Currency, Ltd., supra,* 767 F.2d at 1573, involved an attempt by former customers of the debtor, a dealer in precious metals, to recover their funds from the bankruptcy estate. Prior to filing Chapter 11, the principals of the debtor devised a plan to keep the failing business in operation until the annual stockholders' meeting, when it was hoped that new capital would be infused into the company. They created a special customer trust account for deposits made during the week prior to the meeting. The funds were not intended to be used for operating expenses but were to be used to fill the customers' orders for precious metals if the business remained in operation, and refunded if it closed down. The account was intact at the time the debtor filed its Chapter 11 petition; the funds had neither been re-

funded nor used to fill the customers' orders.

The customers whose deposits were placed in the special account brought suit against the trustee to impress the funds with a constructive trust. Both the bankruptcy court and the district court found for the trustee. In affirming the lower courts, the Ninth Circuit stated:

> A constructive trust is not the same kind of interest in property as a joint tenancy or a remainder. It is a remedy, flexibly fashioned in equity to provide relief where a balancing of interests in the context of a particular case seems to call for it. Moreover, *in the case presented here it is an inchoate remedy; we are not dealing with property that a state court decree has in the past placed under a constructive trust.* We necessarily act very cautiously in exercising such a relatively undefined equitable power in favor of one group of potential creditors at the expense of other creditors, for ratable distribution among all creditors is one of the strongest policies behind the bankruptcy laws.

*Id.* at 1575 (citations omitted and emphasis added).

■ Any constructive trust that might be impressed upon the trustee's settlement proceeds must necessarily be a creature of Utah law. There is some difference of opinion as to *when* a constructive trust comes into existence. Some courts have taken the position that a constructive trust arises at the time the property is wrongfully acquired. *See* G. Bogert, THE LAW OF TRUSTS AND TRUSTEES § 472, at 30 (rev. 2d ed. 1978). While there is no controlling Utah precedent on point, this Court believes that the Utah Supreme Court, if presented with the issue, would hold that a constructive trust, being an equitable restitutionary remedy, comes into existence when a court enters an order or judgment declaring that a series of events has given rise to a constructive trust. *Compare In re Guaranteed Insurance Underwriters,* *Inc.,* 44 B.R. 1004, 1005 (Bkrtcy.S.D.Fla. 1984) (applying Florida law); *In re Tinnell Traffic Services, Inc.,* 41 B.R. 1018, 1021 (Bkrtcy.M.D.Tenn.1984) (applying Tennessee law); *Merrill v. Abbott, supra,* 41 B.R. at 999; G. Bogert, THE LAW OF TRUSTS AND TRUSTEES, *supra,* at 30, *with Close v. Adams,* 657 P.2d 1351, 1352–53 (Utah 1983) (a constructive trust is an equitable remedy to prevent unjust enrichment), *citing Matter of Estate of Hock,* 655 P.2d 1111, 1114 (Utah 1982); *Nielson v. Rasmussen,* 558 P.2d 511, 513 (Utah 1976) (under certain circumstances a court of equity will impress a constructive trust upon property), *citing Haws v. Jensen,* 116 Utah 212, 209 P.2d 229 (1949). *Kesler v. Rogers,* 542 P.2d 354 (1975); *and Corporation of the President of the Church of Jesus Christ of Latter Day Saints v. Jolley,* 24 Utah 2d 187, 467 P.2d 984, 985, 38 A.L.R.3d 1350 (Utah 1970).

■ None of the authorities cited by plaintiff, nor any found by this Court, mandate the imposition of a constructive trust under these facts. On the contrary, to do so would defeat the fundamental bankruptcy policy of creditor equality. In the exercise of his avoiding powers, the bankruptcy trustee acts in a representative capacity on behalf of *all* creditors, not for the benefit of a single creditor. *See In re Sweetwater,* 55 B.R. 724, 734 (D.Utah 1983); *Merrill v. Abbott, supra,* 41 B.R. at 999. Moreover, under Section 551 of the Code, transfers avoided under Section 547 are preserved for the benefit of the estate as a whole. *See C & C Company v. Seattle First National Bank (In re Coal-X Ltd. "76"),* 60 B.R. 907, at 909–12 (Bkrtcy.D. Utah 1986). If plaintiff's theory of this case were correct, Section 551 would be stripped of its plain meaning, the policy of equality among creditors which lies at the heart of Section 547(b) would have to be discarded, and, conceivably, an individual creditor could compel the bankruptcy trustee to exercise his statutory avoiding powers for the sole and exclusive benefit of that creditor.

## DECISION

■ The critical time to determine when property constitutes property of the estate pursuant to Section 541(a) and to adjust the rights of those claiming against the estate is the commencement of the case. *Matter of Felton's Foodway, Inc., supra,* 49 B.R. at 108. At that time, legal title and possession of the former trust funds were with First Security Bank. Whenever a trust fund has been wrongfully converted by the debtor into another species of property, the bankruptcy court will go as far as it can in tracing and following the trust money step-by-step through its various transmutations. *See* 5A REMINGTON ON BANKRUPTCY § 2503, at 327 (5th ed. J. Henderson 1953). But when the trust funds have been entirely depleted by transfer to a bona fide purchaser prior to filing, this Court holds that proceeds received by the trustee in settlement of a preference action against the transferee will be treated as property of the estate not subject to a constructive trust. As an alternative basis for its decision, this Court holds that the strong-arm clause and the policy of creditor equality found in Sections 547 and 551 are overriding expressions of federal policy which dictate that a constructive trust not be impressed upon these settlement proceeds.[3]

Accordingly, the trustee is entitled to judgment dismissing plaintiff's complaint. Counsel for the trustee shall prepare and submit an appropriate form of judgment pursuant to Local Rule 13.

---

3. *See In re North American Coin & Currency, Ltd., supra,* 767 F.2d at 1575–76; *Merrill v. Dietz, supra,* at 10–12; *In re General Coffee Corp., supra,* 41 B.R. at 784; *In re Tinnell Traffic Services, Inc., supra,* 41 B.R. at 1021–22; *Merrill v. Abbott, supra,* 41 B.R. at 1004.