In re Wendell JETER and
Betty Jeter, Debtors.

Doran SHUBERT, Plaintiff,

v.

Wendell JETER, Betty Jeter; Tri–Lakes
Builders, Inc.; Thomas J. Carlson,
Trustee for Bankruptcy Estate of Wen-
dell and Betty Jeter, Defendants.

Adv. No. 93–6068–S.

United States Bankruptcy Court,
W.D. Missouri,
Southern Division.

Sept. 14, 1994.

Lincoln J. Knauer and Lee J. Viorel, Farrington & Curtis, Springfield, MO, for Doran Shubert, plaintiff.

Traci J. Turner, Carmichael, Gardner, Carlson & Clark, Springfield, MO, for Chapter 7 trustee Thomas J. Carlson.

Raymond I. Plaster, Champion & Plaster, Springfield, MO, for Tri–Lakes Builders, Inc.

James R. Doran, Springfield, MO, for debtors Wendell and Betty Jeter.

Cynthia B. McGinnis and Stacey Stenger, Springfield, MO, for Merrill and Mary Osmond.

## *MEMORANDUM OPINION AND ORDER*

KAREN M. SEE, Bankruptcy Judge.

At a trial June 13–15, 1994, appearances of counsel were James Doran for debtors; Raymond I. Plaster for Tri–Lakes Builders, Inc.; Traci J. Turner for Chapter 7 Trustee Thomas J. Carlson; Lincoln J. Knauer and Lee J. Viorel for plaintiff Doran Shubert; and Cynthia B. McGinnis and Stacey Stenger for Merrill and Mary Osmond.

The court heard three matters and ruled as follows: 1) the trustee's motion for substantive consolidation of debtors' estate with Tri–Lakes Builders, Inc., based on commingling of assets and alter ego theories, is granted in part; 2) plaintiff's objection to discharge is sustained and debtors' discharge is revoked; and 3) judgment is entered against plaintiff on his complaint to recover pre-bankruptcy fraudulent transfers and impose a constructive trust on the estate. These findings of fact and conclusions of law are

entered pursuant to Bankruptcy Rule 7052 in this core proceeding.

Plaintiff seeks to recover pre-bankruptcy fraudulent transfers and impose a constructive trust on the premise that he was unable to collect on a judgment before debtors filed a Chapter 7 case because they concealed assets under a son's name, so judgment liens and garnishments did not attach to assets that should have been in debtors' names. Earlier, the court ruled that an action to recover fraudulent transfers could be filed only by the trustee on behalf of all creditors and not by one creditor for his own benefit.

The issue remaining at trial was whether plaintiff is entitled to a constructive trust on assets in debtors' estate. The Jeter estate has no assets and unsecured claims of $52,-000 plus plaintiff's claim in excess of $300,-000. Tri–Lakes has assets of $70,000 and creditors' claims of $125,000. Since only Tri–Lakes has assets, the issue of a constructive trust on assets brought in by substantive consolidation is critical. Plaintiff seeks to consolidate the estates, take all the assets from Tri–Lakes, and deprive both Tri–Lakes and Jeter creditors of any payment.

## I. FACTS

Plaintiff Doran Shubert, an Oklahoma businessman, has been in the construction business and is a bank director and stockholder. In May, 1984, Wendell and Betty Jeter borrowed $105,000 from him, signing an unsecured one-year promissory note, in order to buy the TaCoMo Resort.[1] In May, 1985, the Jeters defaulted. In August, 1986, Shubert filed a suit on the note in Taney County, Missouri.

Debtors built and sold houses. In 1988 they moved from Taney County, Missouri to California. Starting in June, 1989, debtors bought five lots in Taney County and titled them in the name of a son, Farrell, then in his teens or early twenties (Lot 10, Block 3; Lots 16, 23, 13 and 24, Block C, Riverside Estates). Debtors said in depositions this was done to avoid owning land in their names. In September, 1989, at his parents' direction, the son executed a general power of attorney which allowed his parents to act for him.

In February, 1990, debtors moved back to Missouri. Five accounts were opened at Ozark Mountain Bank after debtors obtained the son's power of attorney: 1) the Lee Jeter account was the son's personal account (Farrell commonly used his middle name, Lee); 2) the Wendell and Betty Jeter account, which never had much money in it and which plaintiff alleged was a decoy to divert attention from other accounts; 3) the Farrell Lee account, opened by the parents in the son's name but used for their personal account; 4) the Farrell Jeter Construction account, used by the parents for business; and 5) the Tri–Lakes Builders, Inc. account, opened a year after the Farrell Jeter Construction account to replace it as the business account.

The Jeters used Farrell's power of attorney to open the two accounts in the names Farrell Jeter Construction Company and Farrell Lee. The Jeters were authorized to sign checks; they wrote all checks, made all deposits, and were the custodians of account records. The Jeters opened accounts in their son's name so they could do business free from the demands of creditors such as Shubert. They also gave financial statements to Ozark Mountain Bank but failed to disclose the pending Shubert lawsuit.

---

1. At trial, plaintiff introduced voluminous evidence detailing transactions from 1984 through 1989, but then indicated it was only background and did not pertain to transactions for which plaintiff sought a judgment for fraudulent transfers and a constructive trust. The background evidence is summarized in this footnote. In July, 1986, the Jeters sold the TaCoMo Resort for $150,000 cash and monthly payments. They did not use the proceeds to pay plaintiff's unsecured note. In December, 1986, Sooner, Inc., in which the Jeters owned stock, bought a motel. Sooner filed a Chapter 11 case which was later dismissed. After dismissal, the Jeters received $90,-000 from Sooner's debtor-in-possession account and used it to buy a $90,000 CD at Ozark Mountain Bank. In 1988, they moved to California, used $59,000 from the CD to buy The Drain Doctor business, and put the rest in a personal account at Wells Fargo Bank. Later they bought a $30,000 CD and paid with a check from the personal account. They sold The Drain Doctor for $57,000 plus a $27,000 note. There may have been a post-bankruptcy forgiveness of debt on the sale.

On September 19, 1990, Shubert's suit on the note was tried in Taney County Circuit Court; on February 22, 1991, the court entered judgment against the Jeters for $267,000, representing $105,000 principal, plus interest and attorney fees, plus post-judgment interest at the 13% contract rate. Under Missouri law the judgment would create a lien on any Taney County realty owned by the Jeters, but there was none. The lots were titled in the son's name.

In November, 1990, the Jeters opened the Farrell Jeter Construction account and made deposits in it for about a year, when it was superseded by the Tri–Lakes Builders account as discussed below. The initial deposit was from their assets, but later deposits were solely from the building business. Sales proceeds from houses built on land titled to Farrell went into the Farrell Jeter Construction Company account and remained there until they were either reinvested in land titled to Tri–Lakes Builders, Inc. or improvements on that land, or transferred to the Tri–Lakes Builders account when it was opened. The parties stipulated, based on bank records, that the Farrell Jeter Construction account was purely a business account, used for buying land and building and selling houses. The account was not used for debtors' personal expenses, but Wendell was paid a salary from Farrell Jeter Construction Company (which was deposited in the Farrell Lee account for debtors' personal expenses).

In October, 1990, the Jeters had invested $30,000 in Tri–Lakes Restaurant Fixtures, a corporation in which they and others owned stock. In September, 1991, Tri–Lakes Restaurant Fixtures went out of business. The Jeters received a car and $16,000, which was deposited in the Farrell Jeter Construction account.

In October, 1991, Shubert garnished the Jeters' bank accounts. The garnishment attached only to the account in Wendell and Betty's names. It did not reach the two accounts in their son's name.

In January, 1992, the Jeters and other stockholders of Tri–Lakes Restaurant Fixtures surrendered their stock, changed the name to Tri–Lakes Builders, Inc., and issued the Tri–Lakes Builders stock to the sons,

Farrell and Terry, who were in their early twenties. The sons paid nothing for the stock. The parents capitalized and controlled the corporation; Wendell was president.

After creation of Tri–Lakes Builders, Inc., the Jeters conducted the construction business through the corporation. A legitimate business was conducted by Tri–Lakes Builders and only Tri–Lakes business proceeds were deposited in the Tri–Lakes account. Tri–Lakes borrowed from lenders and received money from buyers, and deposited such funds in the Tri–Lakes account. All funds in the Tri–Lakes account were used for legitimate business purposes to buy land and build and sell houses, and were not used for the Jeters' personal benefit. Wendell was paid a salary by Tri–Lakes. The Tri–Lakes account was the successor in purpose to the Farrell Jeter Construction account, which disbursed its remaining funds to the Tri–Lakes account or to buy land titled in the name of Tri–Lakes Builders after plaintiff's second garnishment. Proceeds from sales of land in Tri–Lakes Builders' name from 1992 through 1994 went solely to the Tri–Lakes account.

Shubert has established that all assets in the Farrell Jeter Construction and the Tri–Lakes Builders accounts were used solely for the purpose of acquiring real estate, in which additional funds were invested to build and sell houses, and resulting proceeds were put in the accounts, which were strictly business accounts. No funds in the business accounts were used by the Jeters for personal expenses. Wendell was paid a salary.

The court finds the above facts establish commingling of funds within the Farrell Jeter Construction and Tri–Lakes Builders accounts to support substantive consolidation. Conversely, as to the constructive trust issue, the facts demonstrate a lack of adequate tracing of funds from the date plaintiff tried to execute on his judgment to the current Tri–Lakes funds from the Osmonds.

In January, 1992, Shubert attempted a second garnishment and collected about $400 in the account in Wendell and Betty's names. Shubert contends that if money in the two

accounts in the son's name had been kept in Wendell and Betty's account, the garnishment would have reached additional funds of $50,752 and $2,032.68, and that he also should have had a judgment lien on $17,000 in realty.

On August 16, 1993, the Jeters filed a Chapter 7 bankruptcy case. Debtors filed fraudulent schedules and concealed assets. In September, 1993, Wendell had his accountant reclassify two notes totaling $70,000, which Tri–Lakes Builders owed to Wendell, to be payable to his sons. The notes were concealed from the trustee and were not discovered until after entry of the discharge order.

In November, 1993, at a Bankruptcy Rule 2004 examination it was learned that Tri–Lakes had closed that morning on the sale of a house to Merrill and Mary Osmond. The Osmonds deposited $72,000 into the Tri–Lakes account. Bills on the house remained unpaid and work remained to be done, so the funds were to be held to pay bills and complete the work. This court entered an order freezing the account so funds would not be dissipated pending resolution of disputes. The parties stipulated that funds frozen by the order are the sale proceeds Tri–Lakes received from the Osmonds.

The Osmonds are creditors of Tri–Lakes Builders along with others such as Lonnie Muehlbauer, an electrician who is owed money for work on jobs. Tri–Lakes debts total about $125,000. Some may be secured by mechanics liens on homes that Tri–Lakes sold, which will complicate matters for innocent purchasers and creditors if plaintiff is awarded a constructive trust on all of Tri–Lakes' assets. The only asset on hand is the balance of the $72,000 in Osmond money which was frozen by order. Mr. Jeter spent $3,000 of the Osmond money, in violation of the order.

Debtors engaged in fraudulent activities during bankruptcy, including reclassification of the $70,000 notes payable to debtors. Debtors violated the November, 1993 order by taking $3,000 of the Osmond funds. They dissipated other Tri–Lakes assets post-petition by selling construction materials and transferring uncompleted contracts to Rich-

ard Miles. Wendell continued to be employed by Miles instead of Tri–Lakes. After the Jeter bankruptcy case was filed, Tri–Lakes also filed a state court suit against a Mr. and Mrs. Scott. None of these matters were disclosed to the trustee.

The Jeters invoked the Fifth Amendment privilege and refused to testify at trial, at part of the depositions, and in debtors' examinations for the state court judgment. At trial they also submitted affidavits and counsel's representation stating they would invoke the Fifth Amendment to all questions.

In the Jeter bankruptcy case there are three listed unsecured creditors: United Savings and Loan and Rex Grady, whose claims total $52,000, and plaintiff Shubert, whose claim is over $300,000. Tri–Lakes Builders, Inc. has creditors with claims estimated at $125,000. The Jeter estate has no assets and Tri–Lakes Builders has assets of about $70,-000.

## II. REVOCATION AND DENIAL OF DISCHARGE

■ Debtors' discharge is revoked because of post-petition fraudulent concealments and transfers which the trustee and creditors could not have discovered before entry of the discharge. Debtors acquired or concealed property of the estate, and knowingly and fraudulently failed to report it on their schedules. Debtors committed acts specified in § 727(a)(6) as described in § 727(d).

Debtors committed the following acts which would cause them to be denied a discharge: transferred, destroyed, and concealed property of the estate with intent to hinder, delay and defraud creditors and the trustee, pursuant to § 727(a)(2); concealed, destroyed, mutilated, falsified and failed to keep and preserve recorded information with respect to their financial condition pursuant to § 727(a)(3); knowingly and fraudulently in connection with the case made a false oath and withheld information from the estate pursuant to § 727(a)(4); refused to obey a lawful order, specifically the November, 1993 order prohibiting debtors from dissipating Tri–Lakes Builders' assets; and failed to re-

spond to material questions pursuant to § 727(a)(6).

## III. SUBSTANTIVE CONSOLIDATION

■ Before bankruptcy the Jeters titled bank accounts, land and corporate stock in the sons' names in order to hinder creditors from collecting debts. The Jeters controlled Tri–Lakes' decisions, although the sons owned Tri–Lakes' stock. Debtors also committed fraud during the bankruptcy case by concealing and disposing of assets. The Jeters ignored corporate formalities for personal benefit by reclassifying corporate notes payable after the bankruptcy was filed to change the payees from debtors to the sons.

■ Because Tri–Lakes Builders, Inc. was created in furtherance of efforts to conceal assets from creditors, even though the corporation then legitimately engaged in a construction business, the court finds sufficient evidence of commingling of the Jeters' and Tri–Lakes Builders' finances and affairs to support substantive consolidation of Tri–Lakes Builders with the Jeter estate. Without either consolidation or an action by the trustee to recover fraudulent transfers to Tri–Lakes, there would be no assets in the Jeter estate, and plaintiff has indicated he would attempt to take action against Tri–Lakes in some other forum, although it appears such an action to recover what are alleged to be Jeter assets would violate the automatic stay. Recovery of assets for the Jeter estate is the province of the trustee and not an individual creditor, and by substantive consolidation, the court can tailor terms to avoid prejudice to Tri–Lakes creditors. The court may restrict substantive consolidation in order to treat the parties equitably and to avoid prejudice to an innocent party. "The bankruptcy court has the power, in appropriate circumstances, to order less than complete substantive consolidation, or to place conditions on the substantive consolidation." *In re Parkway Calabasas Ltd.,* 89 B.R. 832, 837 (Bankr.C.D.Cal.1988), *aff'd,* 949 F.2d 1058 (9th Cir.1991); *see also, In re Giller,* 962 F.2d 796, 799[7] (8th Cir. 1992).

■ Consolidation should be implemented in a manner that is equitable to innocent creditors of Tri–Lakes Builders. Tri–Lakes assets, including any recovered pursuant to the trustee's avoidance and recovery powers in the Tri–Lakes estate, should be distributed first to Tri–Lakes creditors, who did business with the corporation in good faith and without notice of irregularity. Any excess will be distributed to the Jeter estate for distribution to the Jeters' creditors. This restriction in the terms of substantive consolidation is appropriate under the circumstances of this case.

## IV. CONSTRUCTIVE TRUST

Courts are split on whether constructive trusts can be imposed in bankruptcy. Apparently the Eighth Circuit does recognize constructive trusts in sufficiently extreme circumstances. *See, e.g., Chiu v. Wong,* 16 F.3d 306 (8th Cir.1994), where debtor had acquired by embezzlement possession of the property of the party seeking a constructive trust. Other courts have refused to recognize constructive trusts in bankruptcy on the basis they conflict with bankruptcy policy and pro rata distribution. For example, *XL/Datacomp, Inc. v. Wilson,* 16 F.3d 1443, 1452–53[12–13], (6th Cir.1994), in holding that constructive trusts cannot be imposed in bankruptcy, explained that constructive trusts are "anathema to the equities of bankruptcy" and "[t]o permit a creditor, no matter how badly he was 'had' by the debtor, to lop off a piece of the estate under a constructive trust theory is to permit that creditor to circumvent completely the Code's equitable system of distribution."

Even in courts where constructive trusts are recognized in bankruptcy, the remedy is rarely granted and only in the most egregious of circumstances, and usually where a trust is sought on property in which the party claims an ownership interest. Shubert's reliance on cases such as *Chiu v. Wong,* 16 F.3d 306 (8th Cir.1994) and *United States v Whiting Pools, Inc.,* 462 U.S. 198, 205 n. 10, 103 S.Ct. 2309, 2314 n. 10, 76 L.Ed.2d 515 (1983), is inappropriate. Plaintiff cites cases where the party seeking a constructive trust possessed an ownership interest in the property held by the debtor. For example, *Chiu* involved embezzlement of

identifiable funds. In the present case, Shubert did not have an ownership interest in any property concealed by the Jeters. Rather, Shubert was an unsecured creditor who was trying to execute on his judgment. Accordingly, the trustee's powers under § 544 are superior to Shubert's claim as an unsecured creditor attempting to execute on a judgment. Shubert views the Jeters' property as his as of the time of unsuccessful executions. To the contrary, if the fraudulent transfers had not been made, debtors would have filed bankruptcy earlier, and plaintiff would have been in the same position as he is now.

Plaintiff also cited *Abramowitz v. Palmer*, 999 F.2d 1274 (8th Cir.1993), as support for constructive trusts in this district, but it is factually distinguishable. The only issue on appeal was a jurisdictional issue not directly related to the constructive trust issue. However, the bankruptcy court had entered a judgment of nondischargeability and for a constructive trust on a homestead claimed as exempt and held in tenancy by the entireties by the debtor and non-debtor spouse, both of whom were liable for fraudulent misrepresentations in inducing plaintiff to purchase a business. The residence was determined not to be property of the estate, and funds were traceable directly from plaintiff to the residence purchased with the sale proceeds. Thus, there was fraud in the inducement and direct tracing, and the other creditors were not affected by the constructive trust. The present case does not involve any property in which plaintiff had an ownership interest, or even fraud in the inducement to make the loan in 1984.

Under Missouri law, a constructive trust may be imposed to remedy a situation where the debtor has wrongfully deprived another party of some right, title, benefit or interest in property. *Reliance Ins. Co. v. Brown*, 40 B.R. 214 (W.D.Mo.1984). In most cases, a constructive trust is based on proof the debtor acquired property through fraudulent conduct, but the remedy has been imposed by a bankruptcy court to prevent the debtor from being unjustly enriched by fraudulently retaining property. *See In re Auto–Train Corp.*, 53 B.R. 990 (D.D.C.1985),

*rev'd on other grounds*, 810 F.2d 270 (D.C.Cir.1987). Although acts of pre-petition fraud occurred in this case, which may have affected plaintiff's ability to collect a portion of his judgment and may have affected the creation of a judgment lien pursuant to Missouri Rule of Civil Procedure 74.08 and § 511.350 RSMo, this is not an appropriate case for a constructive trust in favor of a single creditor.

The evidence shows a scheme by Wendell and Betty Jeter to conceal their assets from all creditors, including but not limited to creditor Shubert, by placing assets in a son's name and later by conducting business through a corporation owned in the sons' names. Although plaintiff was hindered, his situation was not unique. Other creditors also remained unpaid, including Rex Grady and United Savings and Loan. Plaintiff presented evidence of "badges of fraud" recognized by Missouri courts, but such evidence does not support a constructive trust. The parties stipulated that Shubert must show entitlement to the constructive trust by clear, cogent and convincing evidence, but even if the standard were a preponderance of the evidence, plaintiff did not meet his burden.

Plaintiff Shubert, one of many creditors of the Jeter consolidated estate, seeks a judgment for recovery of pre-bankruptcy fraudulent transfers and a constructive trust on all the assets of both the Jeter and Tri–Lakes Builders, Inc. estates. There are many reasons why plaintiff's request for a constructive trust on all assets of the estate must be denied. Plaintiff has not met the requirements to establish a constructive trust outside bankruptcy law. His contentions as to unjust enrichment and other arguments on the equities are without merit. He has not shown sufficient tracing (assuming he had demonstrated otherwise the application of a trust). He has not established that he has an interest which would overcome the definition of property of the estate under § 541. Finally, he has not demonstrated a claim which would be superior to the trustee's strongarm powers under § 544 and would overcome the trustee's standing under §§ 544, 546, 548, 550 and 551 as the only party who can bring an action to recover property of the estate.

### A. Bankruptcy Considerations

In a bankruptcy proceeding, an action for recovery of a pre-petition fraudulent transfer can be maintained only by the trustee or other designated representative on behalf of all creditors, and not by an individual creditor for his sole benefit. See 11 U.S.C. §§ 544, 546, 548, 550 and 551. By seeking a constructive trust where plaintiff could not maintain a fraudulent transfer action, plaintiff is attempting to recover through a back door what he cannot recover directly.

Any property fraudulently transferred by the Jeters would have been property of the estate under the comprehensive definition of § 541. In order to overcome § 541 and the estate's claim to the property, plaintiff would have to demonstrate that he owned or had an ownership interest in the property in order to come within the exception of § 541(d), but the property fraudulently transferred by the Jeters was not property in which Shubert possessed any ownership interest. Shubert is simply a judgment creditor whose claim as an unperfected or potential secured creditor must be avoided by the trustee's strongarm powers under § 544(a), which powers are exercised on behalf of Shubert and all other creditors. Shubert has no more rights or remedies available to him than any other unsecured creditor. To allow Shubert's status to be elevated at the expense of the other creditors would require the court to disregard the policy and provisions of the Bankruptcy Code. See XL/Datacomp, Inc. v. Wilson, 16 F.3d 1443 (6th Cir.1994).

Plaintiff contends that but for the concealment of assets he would have received the amounts of money in the two accounts in the son's name and in the Tri–Lakes Builders account, plus a judgment lien on lots in others' names. Plaintiff assumes his hypothetical executions would have occurred successfully and would have attached to funds in the same amounts as were on deposit in the three disputed accounts. Plaintiff's assertion is speculative. It is not at all certain that plaintiff would have received the totals he claimed at trial, which exceed the amount of assets in the estates.

For example, if the funds had been placed in the Jeters' own account, upon service of the first garnishment debtors would probably have filed bankruptcy then instead of later to invoke the automatic stay, release the garnishment and allow the funds to be distributed to all creditors pro rata. Alternatively, if plaintiff's first garnishment had been successful, the Jeters would likely have done as have innumerable judgment debtors before them and opened a new account in their names at another bank in an effort to thwart a subsequent garnishment.

If the lots had been titled in the Jeters' names, after the judgment was entered the Jeters would probably have filed a bankruptcy case then instead of later in order to avoid the judgment liens and discharge the judgment on the note. If a bankruptcy case had been filed within 90 days after the judgment lien arose, it would have been avoided as preferential under § 547.

In short, if debtors had followed plaintiff's scenario and kept the assets in their own names, a bankruptcy case would have been filed earlier, plaintiff's judgment on the note would have been discharged, and any claim as a judgment creditor to the funds or the realty would have been avoidable. In Chapter 11, debtor would have continued to operate the businesses pending proposal of a plan of reorganization. If Chapter 7 had been elected, after the filing date debtors would have been free to start a new business free of the discharged debts and plaintiff would never have had a claim to funds which were subsequently received, such as those funds at issue here which, in the absence of an earlier bankruptcy, were deposited in accounts titled in names of the Jeters, the son or Tri–Lakes Builders. Thus, plaintiff would not have been in any better position than he is now.

Plaintiff assumes he had an ownership interest or something equivalent in the Jeters' property as a result of his judgment. In fact, plaintiff was merely an unsecured judgment creditor and if a bankruptcy had been filed earlier, this claim as a judgment creditor, which plaintiff has inflated to ownership status, would have been an unsecured, dischargeable claim inferior to the trustee's strongarm powers under § 544. Thus, it would be both contrary to provisions of the

Bankruptcy Code and inequitable to grant plaintiff a constructive trust on the assets in this estate.

The evidence shows transfers which would be fraudulent under 11 U.S.C. § 548 and the Missouri Fraudulent Conveyance Act, § 428.-005, et. seq. RSMo. (1992), as made applicable by § 544(b). The Code, §§ 544, 546, 548, 550, and 551, provides a remedy for such transfers by allowing the bankruptcy trustee to recover the fraudulently transferred property and bring it back into the debtor's estate. This recovery is for the benefit of all creditors of the estate, not for the benefit of one creditor, even one who may have been defrauded by the transfers.

■ Ready imposition of a constructive trust in favor of the creditor who is speediest or most able to afford the expense of litigation in bankruptcy proceedings would undermine the Code's policy of pro rata distribution and the trustee's powers of avoidance and recovery under §§ 544, 546, 548, 550 and 551. This creditor cannot maintain an action in the bankruptcy case to recover for himself pre-petition fraudulent transfers of debtors' property under the guise of a constructive trust action.

### B. Equitable Considerations

■ As stipulated by the parties, the use of constructive trusts in bankruptcy is an extraordinary remedy. Imposition of an extraordinary remedy requires that plaintiff have no adequate remedy at law. *O'Neal v. Southwest Missouri Bank of Carthage*, 168 B.R. 941, 964 (Bankr.W.D.Mo.1994); *Wilkinson v. Tarwater*, 393 S.W.2d 538, 542 (Mo. 1965). Here, plaintiff has an adequate remedy at law through enforcement of the 1991 judgment. Due to entry of the judgment revoking debtors' discharge pursuant to § 727(d), as requested by plaintiff, his judgment debt will survive the bankruptcy, and Shubert can continue to collect it.

The court must determine whether equity would be better served with or without a constructive trust. Creditors of the corporation have not been paid for construction work, including recent work on the Osmond house. Tri–Lakes Builders existed as a le-gitimate business as to its creditors and customers, although it originated as a repository for the commingled assets of the Jeters and the corporation. These corporate creditors have claims of $125,000. Some are unsecured, but some claims may be perfected mechanics' lien claims on houses previously sold, which will complicate matters for innocent purchasers if a constructive trust is imposed on Tri–Lakes assets. There are also other creditors of the Jeters, including Rex Grady and United Savings and Loan Association, who have unsecured debts listed in the schedules.

In balancing the equities, there was evidence as to which creditors were better able to protect themselves from the Jeters' fraud. If any creditor had knowledge of the Jeters' business transactions, and knowledge of the lending business, and thus was in a better position to protect himself, it was Shubert, in comparison to uninformed creditors of the corporation like the Osmonds and Lonnie Muehlbauer. Creditors of Tri–Lakes Builders should not be penalized for doing business with the corporation in good faith, especially creditors such as the Osmonds, who intended merely to buy a home from Tri–Lakes and have been ensnared in bankruptcy proceedings. Shubert had been in the construction business and was a director of a bank. He had knowledge of lending transactions and chose to be unprotected by making an unsecured loan, thus risking uncollectability, and then waited over a year after default to file suit against the Jeters. Shubert was in a better position to protect himself from risks of uncollectability. He cannot now shift that risk to corporate creditors like the Osmonds and Muehlbauer or other unsecured creditors in the Jeter estate. In fact, if any creditor has a claim to a constructive trust in this case, it would be the Osmonds, who turned over $72,000 with the expectation that it would be held to pay outstanding bills on their home in order to avoid mechanics liens and to finish work on their home.

Plaintiff's arguments about the equities must be applied to the other creditors as well. To impose a constructive trust for Shubert's sole benefit would undermine equity by awarding one creditor a windfall out of

the other creditors' pockets, giving that creditor what only the trustee could recover under §§ 544, 548, 550 and 551 and would be contrary to the Code's policy of pro rata distribution to creditors of a class. It would be especially inequitable to innocent creditors of the corporation, who would be deprived of any chance of payment after being forced into the bankruptcy proceeding by the substantive consolidation order.

There is no merit to Shubert's argument that without a constructive trust the Jeters will be unjustly enriched by allowing them to retain the fruits of their fraud, and it is incorrect both factually and legally. The debts far exceed the assets. The Jeters will not retain any funds in the estate. Rather, all funds will be distributed to creditors, and the unpaid balances of the debts will not be discharged due to revocation of the order of discharge discussed earlier. Pursuant to the terms of the substantive consolidation order, the assets of Tri–Lakes Builders will be distributed to its creditors, as if Tri–Lakes was a separate bankruptcy estate, and any funds remaining after payment of the debts of Tri–Lakes Builders will be paid to the Jeter estate for distribution pursuant to the Bankruptcy Code.

The appropriate parties to consider in this unjust enrichment analysis are the other, similarly situated creditors, not the Jeters. After the trustee distributes the funds of the estate, all the Jeters will receive as a result of the bankruptcy is a judgment denying discharge of remaining debts and a referral by the trustee to the U.S. Attorney for possible bankruptcy crimes committed by the Jeters. Equity has been doubly served because not only are the wrongdoers not enriched, but they will continue to be punished.

### C. Tracing Considerations

■ Even if one assumed a constructive trust might be appropriately imposed in this case, there are no assets on which to impose a trust because plaintiff failed to trace the funds available at the time of his second garnishment in January, 1992, to the funds currently in the Tri–Lakes Builders account. The funds in existence when the two garnishments were issued in October, 1991 and January, 1992, and the Osmonds' funds ultimately frozen in Tri–Lakes Builders's corporate account in November, 1993, were not the same identifiable funds. The evidence indicated that the Jeters' funds were transferred into numerous different investments and accounts at different times, and many of the funds were dissipated long before the bankruptcy, which is insufficient tracing to subject the funds to a constructive trust.

In addition, the funds and real property owned by the corporation in January, 1992 were commingled with other corporate funds which are not traceable to funds the Jeters should have had at the times of the two garnishments, such as proceeds from bank loans, and were dispensed in the course of business for items such as wages and materials. Even if plaintiff were able to tip the scales of equity in his favor for a constructive trust, which he has not done, plaintiff would still have failed to meet his burden on the tracing issue. The Osmonds' funds held in the Tri–Lakes account at the time the court issued its freeze order are not the same dollars or traceable to the same dollars that were in the account when bankruptcy was filed or when Shubert attempted to execute on his judgment. The funds in the Tri–Lakes account in November, 1993 are traceable only to the Osmonds.

■ Additionally, if the lowest intermediate balance test recognized by many courts is applied, the *res* of the trust would have been dissipated long before the funds now in the Tri–Lakes Builders account were deposited. The account balances at Ozark Mountain Bank dipped to low and even negative levels between January, 1992 and 1994 (Tri–Lakes Builders, $–4,936.35; Farrell Jeter Construction, $507.54; Farrell Lee, $2,979.85; and the Jeter "decoy" account, $0.00). Under the lowest intermediate balance test, to the extent the trust funds are dissipated after the trust is imposed, the trust does not attach to new funds coming into the trust. *In re Felton's Foodway, Inc.,* 49 B.R. 106, 109 (Bankr.Fla.1985). Assuming a trust was imposed on the date of the second garnishment, the rest of the trust was dissipated and there was nothing left in 1994 to which plaintiff's trust could attach. The same analysis would

apply to the real estate sold between 1992 and 1994; that property was also completely dissipated.

## V. CONCLUSION, ORDER AND JUDGMENT

In conclusion, the evidence demonstrates that plaintiff's claim for a constructive in this case is merely a disguised effort to recover pre-petition fraudulent transfers for his sole benefit, in violation of the trustee's strong-arm powers and his standing as the only party capable of maintaining a fraudulent transfer action. Aside from the problems in meshing conflicting principles of constructive trust theory and Bankruptcy Code policies, plaintiff has failed to establish that outside bankruptcy court he would be entitled to a constructive trust. For the foregoing reasons, judgment must be entered against plaintiff on all counts relating to recovery of fraudulent transfers and imposition of a constructive trust on assets of the estate.

**It is ORDERED, ADJUDGED AND DE-CREED as follows:**

1. The trustee's motion for substantive consolidation is granted, effective August 16, 1993, with the following limitations:

A. After payment of administrative expenses, claims for debts of Tri–Lakes Builders, Inc., will be payable to the extent assets are sufficient to pay the claims pursuant to the Bankruptcy Code, as if Tri–Lakes Builders, Inc., was a separate bankruptcy estate.

B. Any funds remaining after payment of administrative expenses and the debts of Tri–Lakes Builders, Inc., will be paid to the Jeter bankruptcy estate for distribution to creditors of the Jeter estate pursuant to the Bankruptcy Code.

2. Debtors are ordered to file bankruptcy schedules and statements of affairs for Tri–Lakes Builders, Inc. within 10 days.

3. After schedules are filed, the trustee shall file an application for establishment of a bar date to set a deadline for the filing of claims in the Tri–Lakes Builders, Inc. estate.

4. Judgment is entered against debtors on Count I of plaintiff's Complaint, and the discharge of debtors Wendell Jeter and Betty Jeter is revoked pursuant to 11 U.S.C. § 727(a) and (d).

5. Judgment is entered against plaintiff on all other counts of the Complaint and for costs.